### THE NEW JERSEY SOUTHERN RAILROAD COMPANY v. THE LONG BRANCH COMMISSIONERS.

1. A municipal corporation, under an authority to condemn lands for public streets, has no power to lay a street longitudinally over grounds acquired by a railroad company, under its charter, on which is laid a track in use for the deposit and unloading of freight cars.
2. Under the condemnation of a right to lay streets across a railroad track, or to lay the track of one railroad across another, nothing is acquired but a right of way; the place of crossing will remain in common use of the parties for the exercise of their several franchises. A right affecting so slightly the exercise of the franchises of the corporation whose track is crossed, may be deduced from a mere grant of the power of condemnation.
3. But where the uses for which the condemnation is prosecuted are of such a nature as necessarily to require the exclusive possession and occupation of the lands condemned, lands of a railroad company acquired under legislative authority, and in actual use for corporate purposes, cannot be taken for such uses under the simple grant of the powers of condemnation.
4. The power to declare a forfeiture of the franchises of a corporation for the non-fulfilment of obligations prescribed in its charter, is exclu-

sively in the state, by proceedings directly for that purpose. A forfeiture cannot be taken advantage of or enforced collaterally or incidentally, or in any other mode than by a direct proceeding.

On *certiorari*. In matter of laying out a street in the village of Long Branch.

This writ of *certiorari* is prosecuted to review the proceedings of " The Long Branch Police, Sanitary and Improvement Commissioners," in opening and widening First avenue from Depot avenue to Chelsea avenue. In making this improvement, a strip of land has been taken, thirty-seven feet wide and five hundred and fifty feet in length, in the possession and use of the prosecutors, which had been conveyed to the Long Branch and Sea Shore Railroad.

The said strip of land is a portion of the land acquired by the Long Branch and Sea Shore Railroad Company, under the provisions of its act of incorporation, for the purposes of using the same for the roadway of its railroad, authorized by its act of incorporation, and is a portion of its route as indicated and laid down on the survey thereof on file in the office of the Secretary of State, which survey of its route the said The Long Branch and Sea Shore Railroad Company was required so to file by the provisions of its act of incorporation ; and at this point of its said route, the said railroad company only acquired title to a strip of land sixty feet in width, though authorized by its " act of incorporation " to acquire title to a strip one hundred feet in width.

The strip of land in question is about three hundred or four hundred yards south of the passenger depot or terminus of passenger transportation of the railroad company's railroad. No other use is made by the prosecutor of the railroad lands (a portion of which is now proposed to be used as a public road), than the unloading of freight cars, which are pushed down there for that purpose ; no passenger cars are there used, nor has the railroad company ever used its franchise of carry-

ing passengers at or through this land.   No track is below this point.

The Long Branch Commissioners have instituted and carried on proceedings to take the said strip of land described as aforesaid, being part of the strip of land acquired as aforesaid by the said " The Long Branch and Sea Shore Railroad Company, for the roadway of its said railroad, for the purpose of widening and extending First avenue, between Depot avenue and Chelsea avenue."

Argued at June Term, 1876, before Justices DEPUE, VAN SYCKEL and KNAPP.

For the prosecutors, *Williamson & Man.*

For the defendant, *William H. Vredenburgh.*

The opinion of the court was delivered by

DEPUE, J.   The strip of land proposed to be taken by the defendants was acquired by the Long Branch and Sea Shore Railroad Company, (under which the prosecutors hold), under its charter, for the roadway of its railroad.   A portion of it is in actual use for one of the purposes for which the railroad company was incorporated.   The defendants intend to construct upon it a public street laid · longitudinally over the prosecutor's land, and within the lines of which is a track in use for the deposit and unloading of freight.   The appropriation of this strip as a public street, will necessarily require the removal of the railroad track and the exclusion of the prosecutors from the use of the lands.   A street and a railroad track cannot lawfully co-exist at the place in question.   If the condemnation of the defendants is efficacious, the prosecutors will be excluded from the use of the premises for the purposes to which they were applied, and their rights in that respect be extinguished.

The powers of the Long Branch Commissioners on the subject of streets, are derived from the supplement to the act creating the commission, passed April 8th, 1875.   *Acts of*

1875, *p.* 477. If they are empowered to take lands for streets in *invito*, the power is not more extensive than is usually conferred on municipal and other local authorities to acquire lands for public highways and streets. The right to acquire or extinguish by condemnation the franchises of other corporations is not granted.

The power of the legislature to authorize the condemnation of the franchises or property of a corporation under the right of eminent domain, is not put in issue. Nor is it denied that municipal authorities, under a grant of power to lay streets and take lands for that purpose, may lay streets across the track of a railroad and acquire the right to cross by condemnation. The contention is, that under a simplé grant to a municipal corporation of power to obtain lands for streets by condemnation, another corporation cannot be deprived of lands acquired under legislative authority for the uses for which it was created, and actually appropriated to and used in the prosecution of the business for which it was made a corporation.

Every franchise granted is, in its nature and in the absence of express provision to the contrary, exclusive, except as against the government. *R. & D. B. R. R. Co.* v. *Del. & Rar. Canal and C. & A. R. R. & T. Co.*, 3 *C. E. Green* 546. It may be extinguished under the right of eminent domain, which is one of the inherent powers of government and inseparable from sovereignty, unless withheld from it by its fundamental law. *Kohl* v. *The United States*, 1 *Otto* 367–371. But so long as the legislative will is manifested that the franchise shall continue, it subsists under and is sustained by the sovereign power of the government.

The power of the legislature, on just compensation being made, to sanction the acquisition by one corporation of the franchises of another, may be considered as too firmly established to admit of debate. But it is equally certain that no such power will result from the mere authority to acquire by condemnation the land requisite for the enterprise. A similar immunity must be extended to the property of a corporation,

in connection with which its franchises are solely capable of being exercised. Such property cannot be taken where the appropriation of it to another use will destroy or impair the exercise of the franchises of another corporation, unless the power to take is given in express terms or arises from a necessary implication.

The right of a municipality to lay streets across a railroad track, or of one railroad to lay its tracks across another, is justified on the ground of an authority arising by necessary implication. *Morris and Essex R. R. Co.* v. *Central R. R. Co.*, 2 *Vroom* 205 ; *State, National R. R. Co., pros.,* v. *Easton and Amboy R. R. Co.*, 7 *Vroom* 182. The right of a railroad company to cross public highways with its tracks is derived from the same source. In both these instances, the power being derived by implication, is limited to the necessity out of which it arises. It can only be exercised within the bounds of a reasonable necessity. It was upon this ground that it was held that the Morris and Essex Railroad Company could not lawfully lay its track longitudinally over one of the streets of the city of Newark, without the consent of the proper public authorities. *Morris and Essex R. R. Co.* v. *City of Newark*, 2 *Stockt.* 352. Upon the same principle, the Court of Appeals held that the city of Newark was entitled to enjoin the Newark and New York Railroad Company from the occupation of any portion of a public street in the city, beyond the extent of a reasonable necessity. *Newark and New York R. R. Co.* v. *Mayor of Newark*, 8 *C. E. Green* 515–522. Even where a railroad company is authorized by its charter to change the location of public roads, where it shall find it necessary so to do, and to occupy such portion of the old road as it may deem necessary or expedient, the corporation has not the power to change the location of a road and occupy the road-bed, in case its officers deem it necessary or expedient. It can only do so where the necessity in point of fact does exist. *Inhabitants of Greenwich* v. *Easton and Amboy R. R. Co.*, 9 *C. E. Green* 217; *S. C.,* 10 *Id.* 566. It has also been held that where two companies were incor-

porated to complete two independent lines of railroad, the rights of each company were exclusive, in so far that priority in the adoption and filing of a route, gave priority in location, and that a right to obtain the lands over which such route was located, was thereby acquired, which could not be taken away by the other company purchasing and taking conveyance of lands within such location for the construction of its road. *Morris and Essex R. R. Co.* v. *Blair*, 1 *Stockt.* 635.

In *State, Mayor, &c., of Jersey City, pros.*, v. *Montclair R. R. Co.*, 6 *Vroom* 328, this court held that a railroad company under the ordinary powers to condemn lands for railroad purposes, could not take, by condemnation, lands in the possession of Jersey City, which had been acquired and were held under legislative power for the purpose of constructing a reservoir. And the Court of Appeals of New York has held, that under similar powers, lands held by a municipal corporation as a public park or common could not be condemned. *Matter of Boston and Albany R. R. Co.*, 53 *N. Y.* 574. In an earlier case, the same court decided that a highway could not be laid over lands acquired by a railroad company for the site of an engine house and side-track, necessary for its use as a station.   *The Albany R. R. Co.* v. *Brownell*, 24 *N. Y.* 345.

The distinction between the crossing of a highway or the track of a railroad, and the occupation of the road-bed, which in its nature must necessarily be exclusive, is recognized in the cases cited. Under a condemnation of a right to cross, nothing will be acquired but a mere right of way, and the place of crossing will remain in common use of the parties for the exercise of their several franchises. The condemnation, under such circumstances, will leave the franchises unimpaired. *State, The Easton and Amboy R. R. Co., pros.*, v. *The National R. R. Co.*, 7 *Vroom* 181. A right affecting so slightly the exercise of the franchises of another corporation, may be deduced from a mere grant of the power of condemnation.

But where the use for which the condemnation is prosecuted, is of such a character as necessarily to require for its enjoyment the exclusive possession and occupation of the

premises, it is manifest the condemnation will be utterly futile, unless it may operate also to extinguish the right of the corporation whose title is condemned, to use the lands for its corporate purposes. A condemnation that will accomplish this result will destroy, *pro tanto*, the franchises of the corporation, and impair, to that extent, the powers granted by the legislature. Especially will that be the case where the land has been improved and applied to the designated use by making a roadway or the construction of tracks and improvements upon it. Still more obviously will the legislative intent be defeated where priority of location confers priority of right. The power to invade the privileges of a corporation in such a manner, will not be inferred from a naked grant of the power to condemn. It can only be derived from a power granted either in express terms or arising by a necessary implication; and the legislative intent to authorize such an interference with the rights and privileges of another corporation —whichever way it may be manifested—must be plainly perceived.

In the present case, the strip proposed to be taken lies within the limits of lands authorized to be held by the Long Branch and Sea Shore Railroad Company for railroad purposes. Within those limits, the discretion was conferred on the company to locate its tracks and appendages where and in such a manner as it might be deemed advisable. In the exercise of that discretion, a freight track or siding was placed in this locality. The land, therefore, is land acquired and in actual use for corporate purposes. That the company may conveniently abandon this track, or transact its freight business elsewhere, will not aid the defendants. The discretion to select the site on which the business shall be transacted within the prescribed limits, was delegated by the legislature to the company, and the defendants have no jurisdiction to revise the exercise of that discretion and compel the removal of the track to some place where, in their judgment, the public interests would be best promoted. If their right in this instance be sanctioned, it will be competent for local authori-

ties, almost everywhere in the state, to determine what lands railroad companies shall hold, and what facilities they shall provide for business in the present or the future.

Nor have the prosecutors lost the right to be protected in the use of this property in the enjoyment of the franchises connected therewith, by the fact that the Long Branch and Sea Shore Railroad Company may have subjected its franchises to forfeiture by a failure to complete its road to Squan, in fulfilment of an obligation prescribed in its charter. The power to declare a forfeiture of franchises is exclusively in the government, by proceedings directly for that purpose. A forfeiture cannot be taken advantage of or enforced collaterally or incidentally, or in any other mode than by a direct proceeding. The government creating the corporation, can alone institute such a proceeding. It may waive the broken compact made with it. *Angell & Ames on Corp.*, § 777 ; *The Society, &c.*, v. *The Morris Canal Co., Saxt.* 157.

Nor is the objection available in this proceeding, that it does not appear that the prosecutors are legally in the enjoyment of the franchises of the Long Branch and Sea Shore Railroad Company. It is a matter of judicial knowledge that the Southern Railroad Company has, to some extent at least, succeeded to the rights of the other company, and the defendants have recognized its right in the premises by making the assessments of damages in its name.

The proceedings laying out the road should be reversed, so far as the prosecutors are concerned, with costs.