No. 22,095.

THE UNION PACIFIC RAILROAD COMPANY, *Appellee,* v. HERMAN THEDEN and ANNA THEDEN, *Appellants.*

SYLLABUS BY THE COURT.

1. RAILROAD—*Right of Way—Abandonment—Estoppel.* Where a railroad company has been granted by act of congress a right of way 400 feet wide, under such circumstances that by reason of the public interest it is disabled to convey away any part thereof, it cannot be divested of its right thereto by abandonment or by the operation of equitable estoppel.

2. SAME—*Right of Way—Adverse Possession—Limitation of Actions— Federal Statute Not Retroactive.* The provision of the federal statute known as the Norris act that parts of a railroad right of way which had been abandoned as such should become the property of the abutting owner must be given a purely prospective operation, in view of the authoritative interpretation already placed upon a similar provision of the same act with regard to the effect of adverse possession for the period of the state statute of limitations.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. MCCAMISH, judge. Opinion filed February 8, 1919. Affirmed.

*L. W. Keplinger,* and *C. W. Trickett,* both of Kansas City, for the appellants.

*R. W. Blair, T. M. Lillard, O. B. Eidson,* all of Topeka, and *A. L. Berger,* of Kansas City, for the appellee.

19—104 KAN.

The opinion of the court was delivered by

MASON, J.: The Union Pacific Railroad Company brought ejectment against Herman Theden and Anna Theden for tracts of ground which formed outside portions of the four-hundred-foot strip granted by congress as a right of way to a railway corporation of which the plaintiff is the successor in interest. Neither the grant nor the plaintiff's successorship is disputed, but the defendants rely upon facts which they claim show that the railroad's title and right of possession to the tract in controversy have been lost by abandonment and estoppel. A demurrer to the evidence introduced in support of this contention was sustained, and they appeal.

The evidence on which the defendants relied tended to prove these facts, among others: For thirty years or more the tract in controversy had been occupied by dwellings, orchards and other permanent improvements placed there by persons having a record title to the ownership except for the railroad grant. Adjacent parts of the original right of way had been used for public streets. The plaintiff maintained a fence on each side of its track 150 feet distant therefrom. It has made conveyances of portions of the 400-foot strip adjoining the tract in controversy. It has paid for conveyances of other tracts similarly situated. Defendant Herman Theden purchased a part of the tract held by him in 1899, after having been in possession of it for years as a renter. He then knew of the railroad company having fenced the occupied right of way, leaving this on the outside, and of near-by buildings being located on the outer portion of the 400-foot strip. He did not know of the plaintiff's claim until 1904, when it for a time asserted it, but shortly afterwards paid him $800 for his orchard.

1. Decisions of the supreme court of the United States have settled these propositions: A railroad company to whom a right of way has been granted by the general government "is not at liberty to alienate any part of it so as to interfere with the full exercise of the franchises granted." (*G. Trunk R. R. Co. v. Richardson et al.*, 91 U. S. 454, 468.) By making the width of the granted right of way 400 feet, congress is deemed to have conclusively determined that width to be

necessary to the purposes of the grant. And as the owner of the franchise cannot through affirmative action diminish its scope by conveying to an individual a permanent right of possession to any part of such 400-foot strip, it cannot accomplish the same result by indirection and inaction by suffering such individual to occupy a part thereof for the period of the local statute of limitations, notwithstanding the whole tract may be amenable to the police power of the state. (*Northern Pacific Ry. v. Townsend,* 190 U. S. 267.)

The defendants maintain that their view is not in conflict with any controlling decision, and that it is supported by a decision of the United States circuit court of appeals (*Union Pac. R. Co. v. City of Greeley,* 189 Fed. 1), an appeal from which was voluntarily dismissed by the appellant. (231 U. S. 757.) It was there decided, by a divided court, that, as against a city and public service corporation having the power of eminent domain, the company could be estopped by its conduct from asserting a right to the possession of a part of the original right of way which it had permitted to be used by them under such circumstances as to make its demand against them inequitable. The decision has a tendency to support the theory of the defendants, but is not directly in point because of the public character of the use to which the tracts had been and were to be put—a feature of the case which was treated in the majority opinion as important, if not controlling. Of this phase of the matter it was said in one of the cases already cited:

"Of course, nothing that has been said in any wise imports that a right of way granted through the public domain within a state is not amenable to the police power of the state. Congress must have assumed when making this grant, for instance, that in the natural order of events, as settlements were made along the line of railroad, crossings of the right of way would become necessary, and that other limitations in favor of the general public upon an exclusive right of occupancy by the railroad of its right of way might be justly imposed. But such limitations are in no sense analogous to claim of adverse ownership for private use." (*Northern Pacific Ry. v. Townsend,* 190 U. S. 267, 272.)

Whatever may be the rule as to public and quasi-public bodies capable of acquiring a right of occupancy by condemnation, we think that, the situation being such that the railway company cannot by contract or submission to an adverse possession permanently divest itself of its rights with respect

to any of the 400-foot strip granted by congress, it cannot accomplish that result (except by virtue of a federal statute) by abandonment or by the operation of equitable estoppel.

2. It remains to consider the effect of the act of congress of June 24, 1912, known as the Norris act, containing these provisions:

"That all conveyances or agreements heretofore made by the Union Pacific Railroad Company, or the Union Pacific Railway Company, or Union Pacific Railroad Company, or the Leavenworth, Pawnee and Western Railroad Company, or the Union Pacific Railway Company, Eastern Division, or the Kansas Pacific Railway Company, or the successors or assigns of any of them, of or concerning land forming a part of the right of way of the Union Pacific Railroad Company granted by the Government by the Act of Congress of July first, eighteen hundred and sixty-two, entitled 'An act to aid the construction of a railroad and telegraph line from the Missouri River to the Pacific Ocean and to secure to the Government the use of the same for postal, military, and other purposes'; and also all conveyances or agreements heretofore made by the Union Pacific Railroad Company, or the Union Pacific Railway Company, or the Denver Pacific Railway and Telegraph Company, or the successors or assigns of any of them, of or concerning land forming a part of the right of way between Denver, Colorado, and Cheyenne, Wyoming, of any of said companies granted by or held under any Act of Congress, and all conveyances or agreements confining the limits of said right of way, or restricting the same, are hereby legalized, validated, and confirmed to the extent that the same would have been legal or valid if the land involved therein had been held by the corporation making such conveyance or agreement under absolute or fee-simple title.

"That in all instances in which title or ownership of any part of said right of way heretofore mentioned is claimed as against said corporation, or either of them, or the successors or assigns of any of them, by or through adverse possession of the character and duration prescribed by the laws of the state in which the land is situated, such adverse possession shall have the same effect as though the land embraced within the lines of said right of way had been granted by the United States absolutely or in fee instead of being granted as a right of way. ·

"Sec. 2. That any part of the right of way heretofore mentioned which has been, under the law applicable to that subject, abandoned as a right of way is hereby granted to the owner of the land abutting thereon." (Part 1, 37 U. S. Stat. at Large, p. 138, ch. 181.)

It has been determined that the paragraph referring to the loss of rights through adverse possession is not retroactive, and that in order for the company's title to be extinguished by a state statute of limitation the entire period fixed must elapse

subsequent to the federal enactment quoted. (*Un. Pac. R. R. v. Laramie Stock Yards,* 231 U. S. 190; *Un. Pac. R. R. Co. v. Snow,* 231 U. S. 204.) These decisions were not based on the view that the mere letter of the statute showed a purpose that its operation should be prospective only. On the contrary, the opinions explicitly disclosed that the literal terms of the act were regarded as indicating an intention that it should operate at once upon conditions then existing—that to reach the conclusion adopted it was necessary to invoke the rule of construction that "Courts will not . . . enforce a literal interpretation when by so doing antecedent rights are affected or human conduct given a consequence it did not intend. Such a purpose the courts refuse to assign to the legislature unless compelled by language explicit and imperative." (p. 213.)

The second section of the act, by referring to any part of the right of way which "has been abandoned," instead of "shall have been abandoned," may likewise be regarded as intended to operate on conditions already in existence, if read literally. The mere tense of the verb, however, is rightly considered of little importance in such a situation. We regard the reasoning of the cases cited as compelling such an interpretation of this section as will make its operation wholly prospective. These considerations require a decision against the defendants, whether or not the facts on which they rely would otherwise sustain their claim on the ground of abandonment or estoppel.

The judgment is affirmed.

MASON, J. (concurring specially) : I agree that the interpretation placed by the federal supreme court on the part of the act quoted which relates to adverse possession requires the section concerning abandonment also to be given a prospective operation only, and that in each case such interpretation is the natural result of applying to the face of the statute the approved rule of construction. If the question were an open one, however, I should incline to the view that a consideration of the history of the legislation, showing the situation it was intended to meet, would justify the conclusion that, notwithstanding its want of more explicit statements to that effect, its purpose was that both provisions referred to should operate at once upon conditions exisiting at the time of its

adoption. (See especially the reports of the judiciary committees recommending the passage of the amended bill, 3 House Reports, 62d Congress, 2d Session, Report No. 593; 3 Senate Reports, 62d Congress, 2d Session, Report No. 868.) It would seem that if congress could give effect to existing deeds which without its sanction would not pass title, it might extinguish the title of the railway company to portions of the right of way which it had permitted to be held by adverse possession for the period of the local statute of limitation, or which it had abandoned, on the principle that by its own conduct the company had lost such title as it possessed in its own behalf, and that it was competent for the national legislature to abrogate any claim the company might otherwise assert as a trustee for the benefit of the public. (See *Northern Pacific Railway Co. v. Ely*, 197 U. S. 1; *Alabama v. Schmidt*, 232 U. S. 168.)