No. 23,417.

THE UNION PACIFIC RAILROAD COMPANY, *Appellee*, v. ANTON
HEGER et al., *Appellants.*

No. 23,421.

THE UNION PACIFIC RAILROAD COMPANY, *Appellee*, v. CATHERINE
WESSLING et al., *Appellants.*

No. 23,422.

THE UNION PACIFIC RAILROAD COMPANY, *Appellee*, v. MICHAEL
O'GRADY, *Appellant.*

No. 23,423.

THE UNION PACIFIC RAILROAD COMPANY, *Appellee*, v. FRANK
HABIGER et al., *Appellants.*

No. 23,424.

THE UNION PACIFIC RAILROAD COMPANY, *Appellee*, v. GABRIEL B.
DONMYER, *Appellant.*

No. 22,610.

THE UNION PACIFIC RAILROAD COMPANY, *Appellee*, v. JOHANNA
VELTMAN, *Appellant.*

SYLLABUS BY THE COURT.

1. PUBLIC LANDS—*Homestead Settlements—Railroad Grant for Right of Way
—U. S. Statutes—Change of Route—Width of Right of Way.* Under the act
of congress of July 2, 1864, amending that of July 1, 1862, and permitting a
change of route so that a road at first authorized to be built through Kansas
into Nebraska might at the election of the railroad company be built into
Colorado, the 400-foot right of way provided for in the first act attached to
the road when constructed along the new route, even as against claimants
whose title originated in settlements under the homestead and preëmption
laws after the passage of the second act, although before the construction
of the road and before the filing of any map showing the new route; and
this rule is not affected by the fact that after the passage of the second act
and before the settlements in question the railroad company had filed a map
showing its general route along the line first authorized.

2. SAME—*Public Highway on Railroad Right of Way—Width of Railroad
Right of Way Not Affected Thereby.* Where a railway company has by act
of congress a 400-foot right of way, the laying out of a parallel highway in-
side of its boundaries does not extinguish the company's right to the strip
lying across the highway from the track.

3. SAME—*Judicial Sale of Railroad Property—Rights of Purchaser.* A railway
company which purchases at judicial sale the property of another, including
a 400-foot right of way granted by congress, takes such right of way subject
to the same disability as its predecessor to alienate any part of it, notwith-
standing the United States was a party, and the decree contained a clause
cutting off its interests in the property conveyed.

4. SAME—*Adverse Possession—Statute of Limitations.* Although the federal
statute of April 28, 1904, validating conveyances of portions of a railroad
right of way granted by congress has been held to cover the parting with
title through adverse possession, that enlargement of the term "conveyances
and agreements" in the act of June 24, 1912, of a similar nature, is not per-
missible, for that contains an additional paragraph treating of the effect of
adverse occupancy, which controls that feature of the subject, and has been
held not to allow the loss of title through the operation of the statute of
limitation except by the running of the full period subsequent to the pass-
age of the act of congress.

Appeals from Saline district court; DALLAS GROVER, judge. Opinion filed
February 11, 1922. Affirmed.

*Z. C. Millikin, C. W. Burch, B. I. Litowich,* and *LaRue Royce,* all of Salina,
for the appellants.

*R. W. Blair, T. M. Lillard, O. B. Eidson,* all of Topeka, and *T. L. Bond,* of
Salina, for the appellee.

The opinion of the court was delivered by

MASON, J.: In each of these cases the Union Pacific Railroad
Company brought ejectment against various claimants for portions
of the land lying within 200 feet on each side of its main-line track
in Saline county. The plaintiff recovered, and the defendants
appeal.

1. One of the principal questions involved is whether the right
of way granted by the United States to the plaintiff's predecessor
was superior to the rights originating in settlements on public land
under the homestead and preëmption statutes initiated not earlier
than September 12, 1865. The grant has been construed not to im-
pair the previously accrued rights of settlers under such statutes.
(*Union Pacific R. R. Co. v. Harris,* 215 U. S. 386.) In the case just
cited the homestead entry upon which a patent was later issued was
not made until 1865, but it resulted from the settler's transmuting
his preëmption claim which had originated in 1861, so that the title
obtained operated by relation from that date. (*Stuart v. Union Pac.
R. Co.,* 178 Fed. 753, 763.) The act of July 1, 1862, gave the Leaven-
worth, Pawnee and Western Railroad, of which the plaintiff is the
successor, the privilege of building from the junction of the Missouri
and Kansas rivers to a point on the one hundreth meridian in Ne-
braska, giving it a right of way of 400 feet. (12 U. S. Stat. 494.)
The amendment of July 2, 1864, authorized it to construct its road
so as to connect with the Union Pacific Railroad at any point west-
erly of that previously designated, in case it should "deem such

westward connection more practicable or desirable," being entitled to all the benefits previously provided. (13 U. S. Stat. 360.) Under the permission so given the road was finally constructed from Fort Riley to Denver, the tracts here in question being situated on that portion of it. The defendants (or those of them interested in this phase of the matter) contend that as the railroad company was in 1864 given a mere option to alter its course it could not acquire a right of way along the new route as against settlers whose rights accrued prior to its having accepted the option and taken a decisive step toward the change of direction, such as the construction of the road or the filing of a plat. No action of that character was taken until after settlement had been made by claimants who obtained title thereunder which has passed to these defendants. But in *Stuart v. Union Pacific R. R. Co.*, 227 U. S. 342, the grant of the right of way under these two acts of congress is held to prevail over settlers' rights accruing after the passage of the second one—July 2, 1864. There no plat was shown to have been filed covering the western route at any definite time prior to November 30, 1866, and the road at the point in controversy was not constructed until 1870. The preëmption claim relied upon, as disclosed in the opinion of the circuit court of appeals (178 Fed. 753, 754), was initiated June 16, 1866. That the title to the right of way dates from the passage of the act of 1864 is stated explicitly in the court of appeals opinion (p. 759) and by the clearest implication in that of the supreme court. (See, also, *Railroad Co. v. Davenport*, 102 Kan. 513, 170 Pac. 993.) The defendants here make one point not referred to in the Stuart case, and apparently based upon a fact not there shown—that on July 1, 1865, the railroad company under its then name of the Union Pacific Railroad Company, Eastern Division, filed a map showing its general route up the Republican river from Fort Riley, being at least fifty miles from the land here involved. We do not think this circumstance sufficient to justify the application of a different rule from that which controlled the Stuart case.

2. With respect to a part of the tracts involved a public highway has been laid out paralleling the railroad track at a distance of fifty feet from it. The defendants claim that this effects a severance of the railroad company's right of way—that it cannot hold a right of way consisting of two separate strips, one on each side of the highway. We do not regard the valid existence of the highway as in-

Railroad Co. v. Heger.

consistent with the retention by the railway company of its whole right of way, qualified by the rights of the public with reference to the strip occupied by the road.

3. The defendants claim title by adverse possession for fifteen years, and assert that the familiar rule which in previous cases has prevented the loss by the railway company of any part of its right of way in that manner (*Northern Pacific Ry. v. Townsend*, 190 U. S. 267) does not apply here for this reason: The rule referred to is based upon the theory of the retention of an interest in the right of way by the government for the protection of the public; the plaintiff's title to the right of way is derived through a purchase more than fifteen years ago under foreclosure proceedings to which the United States was a party, and by the decree therein the government was cut off from all rights to the property sold excepting certain enumerated privileges, not including this, which were expressly saved. We do not find the reasoning convincing. We regard the considerations of public policy which forbade the alienation of any part of the right of way by the original grantee as applying here with equal force, notwithstanding the decree barring the interests of parties to the litigation. The buyer acquired the rights of the former owner of the right of way, which were to use it as occasion might require for railroad purposes.

4. In 1880 the superintendent of the railroad company then owning the property proposed to one of the defendants to furnish him the plants for a hedge fence fifty feet north of the center of the track if he would plant them; the defendant accepted the proposition and carried out its terms; a part of the hedge being destroyed by fire, the company replaced it with a wire fence which has since been maintained. It is contended that these proceedings amounted to an agreement fixing the boundary of the right of way. In two of the other cases the defendants claim through deeds from the original railway company containing these provisions: .

"Reserving to said company and its assigns the right of way for said railway in width and in manner and form as provided by the Acts of Congress in relation thereto. And it is further agreed that whenever it is required by law that the company shall fence its road, such fence along the line of the road upon the land hereby conveyed shall be erected and maintained by the party of the second part and its successors and assigns in all respects as required by law; and this agreement is hereby declared a covenant running with the land herein conveyed."

Fences have been maintained at a distance of fifty feet from the middle of the track. The defendants in the three cases referred to contend that they are entitled to the outside 150 feet of the original right of way in virtue of the act of congress of June 24, 1912, validating all conveyances or agreements confining the limits of the 400-foot right of way originally granted. (37 U. S. Stat. 138.) We do not regard the circumstances stated as showing such a conveyance or agreement, or as impairing the plaintiff's title to any part of the right of way unless through establishing an adverse possession, and so setting the statute of limitation in operation. It has been specifically held, however, that the act referred to gives no title by reason of the running of the statute of limitation unless the full period had elapsed prior to its enactment. (*Un. Pac. R. R. v. Laramie Stock Yards*, 231 U. S. 190; *Un. Pac. R. R. Co. v. Snow*, 231 U. S. 204; *Nadeau v. Union Pacific R. R. Co.*, 253 U. S. 442; *Railroad Co. v. Theden*, 104 Kan. 289, 178 Pac. 441, petition for writ of certiorari denied, 253 U. S. 485.) The defendants assert that a different rule applies here by reason of the interpretation placed upon an act of congress which they conceive to be of the same effect, in *Northern Pacific Railway Co. v. Ely*, 197 U. S. 1. It was there held that under the act of April 28, 1904 (33 U. S. Stat. 538), validating conveyances of portions of the right of way theretofore made by other railroad companies, adverse occupancy for the statutory period might be regarded as equivalent to a conveyance, by invoking the doctrine of presumption. That conclusion was reached by a very liberal construction of the language of the statute to promote its purpose, the word "conveyance" being expanded to cover the suffering of title to be lost by a hostile occupancy. (*Nor. Pac. Ry. v. Concannon*, 239 U. S. 382.) As shown by the cases cited the federal supreme court has not given that scope to the words "conveyances and agreements" in the act of 1912, and an obvious and sufficient reason for not doing so is this: The act of 1904 in terms provides for the validation of "conveyances" of portions of a right of way, nothing being said in so many words about adverse possession. In that situation there is room for construing the word "conveyances" so as to include parting with title by a method regarded as substantially the same within the purpose of the statute. But the act of 1912, in addition to considering the effect of conveyances, contains a separate paragraph relating to the effect of adverse possession. The attention of the framers of

the act having been addressed to adverse possession as a distinct subject, it would not accord with the usual rules of construction to assume that they had adverse possession in mind while dealing elsewhere in the same act with conveyances.

The judgments are affirmed.