No. 28,548.

Anthony L. Ruff, *Appellant* and *Appellee*, v. The Board of County Commissioners of Shawnee County, Consisting of J. A. Cole, Chairman, John Sutherin, Jr., Ira C. Williams, and The Union Pacific Railroad Company, *Appellant* and *Appellee;* and The State Highway Commission, *Appellee.*

(272 Pac. 189.)

Opinion filed December 8, 1928.

*A. E. Crane, Tinkham Veale, B. F. Messick* and *A. Harry Crane,* all of Topeka, for the appellant.

*T. M. Lillard, Bruce Hurd, O. B. Eidson, Paul Heinz* and *Edward Rooney,* all of Topeka, for the appellee.

*William A. Smith,* attorney-general, and *Roland Boynton,* assistant attorney-general, for the State Highway Commission.

The opinion of the court was delivered by

DAWSON, J.: This action was begun by Anthony L. Ruff, a taxpayer, to enjoin the board of county commissioners of Shawnee county from constructing a paved road on the south 66 feet of the 400-foot right of way of the Union Pacific railway for a distance of ten and a half miles from the city of Silver Lake through the city of Rossville to the western limits of Shawnee county.

It may help to an understanding of the transaction which led up to this lawsuit to refer briefly to certain more or less familiar matters of history, to certain acts of congress, and to certain judicial decisions. In 1862 and 1864 congress granted to the predecessors of the Union Pacific Railroad Company a right of way for a railroad over the public domain from the Missouri river to the Pacific ocean. (12 U. S. Stat. 489; 13 U. S. Stat. 356.) This right of way grant was 400 feet wide. In Kansas this grant crossed Shawnee county from east to west near the center of the county. The railway was constructed through the county about 1867. In close proximity and paralleling the railway, sometimes on one side of it and sometimes on the other, there is a well-travelled public road which has been in existence for half a century. It is familiarly known by various names—U. P. highway, Golden Belt highway, Victory highway, and by its latest designation, U. S. No. 40. Much

of this road in Shawnee county is on the railway right of way, but not through express permission of the railroad company. In certain stoutly contested lawsuits, some of which arose over thirty years ago and the last of which was decided in 1912, it was conclusively determined that under the terms of the original congressional land grants for railway rights of way, the general rule of law creating prescriptive title by adverse possession did not apply, and that it was both the privilege and duty to the railway grantee to hold on to its right-of-way grants to meet possible future needs of transportation and its incidents. The effect of these decisions was to hold for naught all claims of right to whatever portions of its right of way were occupied or held adversely to the railway company by private persons or by the public itself. And thus it eventually developed that the public had no right or title to the land which this Shawnee county road had occupied for so many years. A multitude of situations of this sort throughout the states traversed by the Pacific railroads prompted congress to enact a statute, the Norris act, which took effect on June 24, 1912, and which provided that the congressional grants for railway rights of way would thereafter be subject to the local law of adverse possession in whatever state they were located. (37 U. S. Stat. 138.) The effect of this act on this particular road in Shawnee county was that unless the Union Pacific Railroad Company within fifteen years from June 24, 1912, should take some effective step to assert its paramount right and title, or obtain an acknowledgment thereof by some official body authorized to bind the public, the company would or might lose the land occupied by this road by the Kansas law of adverse possession.

Accordingly in 1916 the matter of occupancy of the Union Pacific right of way in Shawnee county became the subject of certain conversation between the attorneys for the railroad company and the board of county commissioners of Shawnee county, which at that time was engaged in making certain improvements on this road. The railroad representatives informed the board that it could recognize no right of occupancy of its property for highway purposes except that of sufferance. In 1922 the board of county commissioners set about the paving of a section of this road from a point about eight miles west of Topeka to the city of Silver Lake. The Union Pacific commenced an action in the district court asserting its ownership of the land on which the road improvements were to be

made, and prayed for an injunction. The county board denied the ownership of the railroad company and alleged that it had a mere easement for railroad purposes, and that the public had an equal right to the use and occupancy of the land for highway purposes. In a consent decree it was adjudged—

"That the railroad company was the owner of a tract of land 400 feet wide, but further found and adjudged that the prayer of the petition be denied, 'with the condition and proviso that the laying and maintaining of said pavement shall not give to Shawnee county or to the public any title to the ground upon which said pavement is laid or any interest that can ripen into a title by user or that will interfere with the plaintiff in the use for railroad purposes of any portion of its right of way 400 feet in width, being 200 feet on each side of the center line of plaintiff's railroad track as now located along the lands in controversy herein, and upon the further condition and proviso that the laying and maintaining of said pavement shall not impair the title of the Union Pacific Railroad Company to its said full width of right of way.'"

In 1925 and 1926 the board of county commissioners instituted preliminary proceedings looking to the paving of that portion of the road which lies between Silver Lake and the west line of Shawnee county. At Silver Lake the road crosses the Union Pacific railway from south to north and runs west on the railway right of way for about two miles. It there recrosses the railway track to the south side and continues westward on the railway right of way for about four miles to Rossville, at which place it crosses again to the north side of the railway and occupies the railway right of way for four or five miles to the west line of the county. The proposed road improvement depends upon the acquisition of a satisfactory title to the roadway, and this became the subject of negotiations between the board of county commissioners of Shawnee county and the officials of the railroad company. The bureau of public roads of the national government signified that the granting of federal aid would depend upon a relocation of the road to avoid so many railway crossings. The state highway commission took the same attitude as the federal government. The Union Pacific Railway Company signified its willingness to grant a fifty-year lease for a roadway on the south 66 feet of its 400-foot right of way; and on May 11, 1927, its legal representatives addressed the county board, in part, thus:

"Final decision of the county on the lease should be made so that it can be fully executed early in June. At present there are county highways oc-

cupying certain portions of our right of way without any lease. The lease when redrawn will contain a provision that the county acknowledges the title in fee simple of the railroad company in all existing highways described in the lease. Under the act of congress of June 24, 1912, adverse possession for the period of fifteen years from that date will give the occupant title by possession. Hence if our title is not recognized and acknowledged in writing before the expiration of the fifteen-year period on June 24, 1927, we will have to protect our rights by proper court action. ·Of course, there is no dispute or controversy between the county and the railroad company, and merely mention the necessity of prompt action on the lease, so that the rights of the railroad company will not be impaired."

A few days later the county board adopted a resolution, viz.:

"RESOLUTION OF ACCEPTANCE.

"WHEREAS, The Union Pacific Railroad Company has tendered to the county of Shawnee, state of Kansas, a lease of portions of its right of way to said county, which said lease is in words and figures following, to wit: [Here follows copy of lease.]

"And whereas, it is considered that the best interest of said county of Shawnee, state of Kansas, will be subserved by the acceptance of said lease:

"Therefore, be it resolved by the board of county commissioners of the county of Shawnee, state of Kansas: That the terms of the lease submitted by the Union Pacific Railroad Company be and the same are hereby accepted in behalf of the county of Shawnee, state of Kansas; that the chairman of said board of county commissioners of the county of Shawnee is hereby authorized, empowered and directed to execute said lease in behalf of said county, and that it be duly attested by its clerk.

"Adopted and approved at Topeka, Kan., this 17th day of June, 1927.

J. A COLE,

JOHN SUTHERIN, JR.,

[Seal.]     *Board of County Commissioners.*

"Attest: O. B. EDDY, *Clerk of the County of Shawnee, State of Kansas.*"

The lease contract comprises about twelve printed pages of the abstract, but for present purposes its contents may be abridged thus:

The railway company leases to the board of county commissioners a strip of land for a roadway sixty-six feet wide on the south side of its right of way from Silver Lake to the county line. The lease is to endure for fifty years, and provides that if in that interval the lessor shall need the land for railway purposes it will construct and make over to the county board a similar highway equally well improved without cost to the county. The consideration for the lease is $5 per annum, and the county is to assume all taxes and assessments levied upon the leased premises during the lease term, to keep the premises free from combustible material, to plant no trees

or shrubbery without consent of the lessor, to put nothing on the premises which might obstruct the view, and to provide culverts, bridges and other structures necessary for drainage, and to hold the lessor harmless from damages on account of such structures arising from fire caused by sparks from the lessor's engines or trains. It was also stipulated that no special assessments for establishing or improving the highway upon the leased premises should be charged against the company's adjacent right of way, and that wherever the lessor now maintains a fence on the right of way between its railway tracks and the inner margin of the leased premises the county board will relocate and maintain such fence at its own expense. It was also stipulated that the county board will complete the relocation and construction of the road on the leased premises within three years, and when it is opened for public travel the county board will close to traffic, vacate and abandon seven specified grade crossings over defendant's railway track in that locality, and vacate and abandon all portions of the railway company's right of way for various distances specified, including that part of the present highway "on the north side of the track of the lessor from the west limits of the city of Rossville, Kan., to the west county line."

On the execution of this lease the county board set about the relocation and improvement of the road, when the proceedings were halted by this lawsuit.

The plaintiff, Anthony L. Ruff, owns and resides on a farm situated on both sides of the railway track about three miles west of Rossville. His residence and farm buildings are situated on the north side of the public road as now located. If the proposed paved road is constructed on the south side of the railway track and the present location of the road is abandoned, he will be inconvenienced and his farm will be depreciated in value. His petition recited at length the history of the establishment of the highway many years ago, pleaded the substance of official proceedings of the board of county commissioners concerning the road and improvements made thereon at public expense from time to time in bygone years, all of which had been ordered and done with the knowledge of the Union Pacific Railroad Company, and that the latter was thereby estopped to claim that the public did not have good right and title to the roadway; that in 1916 plaintiff erected his house and barn and other improvements on the road so traveled for so many years;

that he built his improvements in reliance upon the public and permanent character of the road and that its vacation and abandonment would greatly inconvenience him. Plaintiff further alleged that the lease contract between the board of county commissioners and the railway company was illegal and that the county board thereby incurred unlawful obligations which would increase his burdens as a taxpayer. Plaintiff also alleged that the county commissioners' proceedings for the relocation of the road were illegal in various particulars, chiefly because certain provisions of statute governing the alteration of highways to eliminate railway crossings were not followed. Other objections to the validity of the commissioners' proceedings pleaded by plaintiff, so far as important, will be noted as we proceed.

The county board answered, admitting the execution of the lease of the roadway, and admitted the proceedings for the relocation of the road, and concluded with a general denial. The state highway commission intervened and pleaded at length the matters affected by the litigation which in its judgment concerned the general public. In part it alleged:

"6. That in the year 1925 representatives of the state highway commission and the bureau of public roads of the United States department of agriculture made a route check of the road known as the Victory highway from Topeka to St. Marys, and recommended as a part of the location of said road that from Rossville to the west county line the highway should be parallel to and on the south side of the Union Pacific railroad.

·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

"8. That on the 23d day of May, 1927, the board of county commissioners of Shawnee county, Kansas, finding it necessary in order to eliminate sharp turns, dangerous places, dangerous railroad crossings and for the proper construction of said road, ordered and directed that that portion of state highway No. 40, commonly known as the Victory highway, from the west limits of Silver Lake to the west limits of Shawnee county, Kansas, be relocated by vacating the road on the north side of the Union Pacific railroad tracks and opening a road on the south side of the Union Pacific right of way.

·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

"10. That on the 23d day of May, 1927, the board of county commissioners of Shawnee county, Kansas, ordered that said road, as relocated, be improved as a federal-aid road, and that the construction and maintenance work be carried on under the direct supervision of the state highway commission as required in the federal-aid road act.

·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

"13. That on the 21st day of September, 1927, the state highway commission of the state of Kansas ordered, by proper resolution, that in the matter of permanently improving U. S. No. 40 in Shawnee county, Kansas, from the

west borders of the city of Silver Lake to the west county line, *that no provision for further aid to the county in financing such project should be made* by the state highway commission *unless* said county should apply for such aid *upon a highway to be located on the south sixty-six feet of the right of way of the Union Pacific Railroad Company.*

"15. That the board of county commissioners of Shawnee county, Kansas, having relocated the portion of U. S. highway No. 40, which lies west of the city of Silver Lake, as above set out, thereupon proceeded to exercise the right of eminent domain to acquire the right of way necessary for the relocation and improvement of said road.

•    •    •    •    •    •    •    •    •    •    •    •    •    •

"19. That, as above stated, the improvement of the road running from Silver Lake to the west boundary line of Shawnee county, Kansas, is but a part of the improvement of said Victory highway through the state of Kansas; that the location of said road has been made under the direction and with the approval of the state highway commission and the bureau of federal roads, and that the location of said road in Shawnee county, Kansas, is made for the purpose of having said road through Shawnee county, Kansas, properly located with respect to said road in adjoining counties.

"20. That if plaintiff's land should suffer damages because of the relocation and improvement of said road the law provides a method of compensation to plaintiff, and such damages should not be put forward as a reason for enjoining the relocation and improvement of said road."

The Union Pacific Railroad Company was impleaded as a defendant. It answered with various admissions and denials and set up its title, and alleged that the existing road occupied its premises by permission only; that the roadway had never been actually or impliedly dedicated for public use, and that the company had at all times asserted its full ownership under its grants from congress; that for several years the matter of leasing part of its right of way for a public road had been the subject of negotiations between the board of county commissioners and the railway company, and that such lease had eventually been affected on June 17, 1927, as alleged in plaintiff's petition. The railway company concluded its answer with a challenge of the plaintiff's right to maintain this action.

Plaintiff filed a reply to the railway company's answer, consisting of a general denial; and filed a demurrer to the intervening petition of the state highway commission, which was overruled.

The cause was tried on record evidence and oral testimony without a jury. The court made comprehensive findings of fact, to which neither party is now objecting. These occupy some eighteen pages of the abstract and counter abstract. Judgment was formulated in accord with the trial court's conclusions of law, which read:

"I. The plaintiff has a legal right to maintain this suit.

"II. Neither the board of county commissioners nor the public has acquired any title or right of possession as against the Union Pacific Railroad Company to that part of right of way of the railroad company now occupied by the present highway through the proceedings set out in findings of fact numbers VI, VII, VIII, IX and X.

"III. Neither the board of county commissioners nor the public has ever acquired any title or right of possession as against the Union Pacific Railroad Company to that part of the right of way now occupied by the present highway through adverse possession.

"IV. There has been no dedication by the Union Pacific Railroad Company to the board of county commissioners or to the public of that part of the right of way now occupied by the present highway, nor has the railroad company by its conduct lost its title or right of possession to the same by estoppel.

"V. On June 17, 1927, defendant Union Pacific Railroad Company was the owner of the entire width of its 400 feet of right of way, including the portion of the same now occupied by the present highway, and at any time up to said date was entitled to the possession thereof if it so desired.

"VI. The provision of the lease in question providing for the locating and construction of the highway on the south sixty-six feet of the Union Pacific Railroad right of way from Silver Lake to the west line of the county, and the order of the board of county commissioners of May 23, 1927, so locating said highway are illegal and void for the reason that no petition of twelve householders living in the vicinity of the highway so located and to be constructed has ever been filed with board of county commissioners of Shawnee county, Kansas.

"VII. The board of county commissioners of Shawnee county were not authorized by section 68-114, Revised Statutes of 1923, to vacate the present highway and relocate the same or to lay out a highway on the south sixty-six feet of the Union Pacific railroad right of way from Silver Lake to the west line of Shawnee county.

"VIII. While the county nor the public has ever acquired title or right of possession of that part of the right of way now occupied by the present highway, the board of county commissioners of Shawnee county, Kansas, had a legal right to contract with the railroad company in said lease for the surrender of possession of the present highway to the said railroad company, and to recognize the title and right of possession of the railroad company in that part of the right of way now occupied by the present highway, and such contract and recognition has the effect of preventing the statute of limitations from having run in favor of the defendant, the board of county commissioners, and in preventing said board of county commissioners from having acquired title or right of possession since June 17, 1927.

"IX. The provisions of section 2 of the lease pertaining to the assumption of the county of all taxes and assessments levied upon the leased premises during the continuance of the lease and of section 8 relating to the moving and maintenance of right-of-way fences of the railroad company by the county are *ultra vires* of the board of county commissioners and are void.

"X. Plaintiff is entitled to a permanent injunction against the defendant

carrying out the provision of the lease looking to the relocation of the present highway and the laying out and establishment of a public highway on the leased premises."

Plaintiff appeals from so much of the judgment as is based on the above conclusions of law numbered II, III, IV, V and VIII. The railway company brings its cross appeal, assigning error on so much of the judgment as is based on conclusions of law numbered VI, VII, IX and X. The county board and the state highway commission adopt the same general position as that taken by the railway company, but have not filed formal and separate cross appeals in their own behalf. In their separate briefs the railroad company and the highway commission argue the want of plaintiff's capacity to maintain the action, but section 265 of the civil code (R. S. 60-1121) is his warrant of authority therefor, although that code section does not imply that a private taxpayer may litigate every conceivable question which may arise out of such a contract as the one now under consideration. So, too, if plaintiff can show a right or interest peculiar to himself which is unlawfully invaded by the lease contract he can maintain an action to enjoin its enforcement where no other legal redress is obtainable. But, of course, plaintiff as a private citizen cannot litigate legal questions which are not his especial concern. (*Weigand v. City of Wichita,* 111 Kan. 455, 207 Pac. 651.)

Turning to the errors pressed by plaintiff:

It is argued that the county or the public has a prescriptive title to the roadway by virtue of its half century's use. But that was effectively laid at rest by repeated decisions of the United States supreme court, beginning with *Northern Pacific Railroad Co. v. Smith,* 171 U. S. 260, 43 L. Ed. 157, decided in 1898, and ending in *Kindred v. Union Pacific Ry. Co.,* 225 U. S. 582, 56 L. Ed. 1216, decided June 10, 1912. Doubtless this last decision gave impetus to the bill then pending in congress, the Norris act, which took effect shortly thereafter, June 24, 1912.

Virtually the same conclusion as that of the federal supreme court in cases involving encroachments in railway rights of way had been reached by this court twenty years before, in *U. P. Rly. Co. v. Kindred,* 43 Kan. 134, 23 Pac. 112, where it was held that the possession of abutting or adjoining landowners who cultivate and occupy a part of a railway right of way granted by congress must be regarded as permissive only, and not hostile or adverse so as to confer title. To the same effect were *Railway Co. v. Conlon,* 62 Kan. 416,

63 Pac. 432; *Railway Co. v. Watson,* 74 Kan. 494, 87 Pac. 684; *Railroad Co. v. Davenport,* 102 Kan. 513, 170 Pac. 1003. In a specially concurring opinion in *State, ex rel., v. Paul,* 112 Kan. 826, 832, 213 Pac. 165, the pertinent law was stated and the leading texts and decisions were cited:

"It is the settled law in this state, and generally, that in the absence of special statutory authority, acting under the general statutes to lay out streets and highways, municipal and county officials have no authority to lay out a street or highway longitudinally upon the right of way of a railroad company. (*U. P. Rly Co. v. Kindred,* 43 Kan. 134, 135, 23 Pac. 112; *City of Bridgeport v. New York & New Haven R. R. Co.,* 36 Conn. 255; *New Jersey Southern R. R. Co. v. Long Branch Commissioners,* 39 N. J. L. 28; *Road from Great Bend to Great Bend Village,* 2 Penn. Co. Ct. Rep. 335; *Nanticoke Bridge,* 40 Penn. Super. Ct. Rep. 345; *Portland Ry. Light & Power Co. v. City of Portland,* 181 Fed. 632, 634; *City of Fort Wayne v. The Lake Shore and Michigan Ry. Co., etc.,* 132 Ind. 558; 15 Cyc. 619, 10 A. & E. Encycl. of L., 2d ed., 1096; 3 Dillon on Municipal Corporations, 5th ed., § 1020; 3 Elliott on Railroads, 3d ed., § 1566.)"

It was because of such an insuperable mass of federal and state decisions that in 1919 and 1920 congress gave its express sanction that railway rights of way held under federal grants might be used or granted for highway purposes. (41 U. S. Stat. 304, Act of Oct. 22, 1919; 41 U. S. Stat. 621, Act of May 25, 1920.) Of course these recent federal acts did not change any state law. They merely made possible subsequent state legislation on that subject.

Plaintiff next attacks the validity of the consideration and obligations undertaken by the board of county commissioners. A fifty-year lease for a roadway upon the Union Pacific Railway Company's 400-foot right of way in Wyandotte county has already been upheld by this court. (*Sandburg v. Wyandotte County Comm'rs,* 121 Kan. 26, 245 Pac. 1029.) But it is pointed out that the present contract binds the county commissioners to pay the taxes on the leased premises. Superficially that seems questionable, but when it is considered that so long as the leased premises are used as a public roadway it will be public property, and no taxes will be assessable against it, the objection dissolves. The provisions which bind the county board to keep the premises free of combustible material, not to plant trees which would obscure the view of the lessor's railway trains, and to provide proper culverts, bridges and the like for draining the leased premises and the adjacent right of way, and to save the lessor harmless from damages pertaining thereto, are only obvi-

ous and necessary details of this contract; and to hold them invalid would be to make it practically impossible for any roadway to be obtained from this railroad company. Certainly no responsible railroad official would grant or lease a roadway adjacent to the main line of his railroad without exacting some such conditions dictated by common prudence.

It is also plausibly argued that the board has no power to pay anything for a roadway except a stipulated sum of money, and *Zahn v. Ottawa County,* 108 Kan. 741, 196 Pac. 1060, and *Haucke v. Morris County,* 115 Kan. 659, 224 Pac. 64, are cited in support of that contention. But those cases dealt with contracts between boards of county commissioners and private individuals, for the special benefit of private individuals. This lease contract is not made for the private benefit of individuals, but for the common benefit of the public which will use this road for the next half century. There was nothing to prevent the county board from exercising the right of eminent domain to acquire a roadway over farming lands adjacent to the Union Pacific right of way, but land is so very valuable in that locality—the well-known Kaw valley—that the board might well hesitate to incur the necessarily heavy expenditure of public funds that project would require, especially when the railway company was willing to lease a roadway on relatively nominal terms.

Another objection to the lease is the provision that no special assessments for establishing or improving the highway located on the leased premises shall be levied against the adjacent right of way. That provision is of no present importance. There is now no statute under which such a special assessment could be levied, consequently an increase of plaintiff's burdens as a taxpayer is not threatened by this provision, and he has therefore no justiciable concern therewith. Plaintiff also objects to the county's obligation concerning the relocation and maintenance of railway fences at its own expense. That, too, is a mere incident, not improper, at least so far as concerns plaintiff's right to maintain this lawsuit. And the same answer sufficiently disposes of plaintiff's fault-finding with the county board's agreement to close certain grade crossings. The trial court found that the relocation of the road on the south side of the railway track will not eliminate any crossings which presently exist over regularly laid-out north-and-south highways. (Finding XXVII.) Plaintiff does not show how the closing of those seven

grade crossings will hurt him peculiarly, so he is not now justicially concerned therewith. (*Elting v. Clouston,* 114 Kan. 85, 217 Pac. 295.)

Plaintiff cites the statutes which govern changes to be made in public roads to avoid sharp turns or dangerous places (R. S. 68-102, *et seq.;* 68-114; 68-509), and insists that a petition of twelve householders is requisite both to the relocation of a public road and to the vacation of an existing road. (*Heatherman v. Kingman County Comm'rs,* 123 Kan. 77, 254 Pac. 321.) But if the railway company had assumed a dog-in-the-manger attitude in this matter, and had brought ejectment against the county, the public would not have a roadway on this railroad company's property on either side of the track, and the ordinary statutory provisions for procuring a highway would then necessarily have to be invoked and followed. Here it cannot strengthen the county's right in the old roadway, nor lessen the county's right to contract for a new roadway, that certain inapposite statutory steps have not been taken. The statutory provisions cited were not designed to fit the peculiar situation presented in this case. In its negotiations with the Union Pacific the county board's warrant of authority was founded on R. S. 19-212; and yet, so far as practicable, it appears (finding XXV) that the board was proceeding to relocate this road in substantial accord with R. S. 68-114, which provides:

"When it is found necessary to lay out, relocate, alter, widen or vacate a road or highway *for the purpose of eliminating sharp turns or other dangerous places, or for the proper construction of a highway,* or for the extension of a bridge or culvert, the board° of county commissioners shall, by order of said board, lay out, relocate, alter or widen a public road, and may vacate an existing road. All land required for the laying out, widening or altering of a road shall be·acquired by the board of county commissioners by purchase or by donation."

The pertinent resolution of the county board, in part, reads:

"The board further finds: That it is necessary to so relocate said state highway No. 40 in order to eliminate sharp turns, dangerous places, dangerous railroad crossings, and for the further reason of connecting and joining with the state highway in Pottawatomie county, Kansas, and for the further purpose of better facilitating travel and for the proper construction of the road."

Under the statute just quoted and in the circumstances confronting the board (finding XXV), the proceedings of the board of county commissioners were valid and proper. Were the necessity for action even less urgent, the abandonment of the north side of the railway track would not warrant the granting of an injunction at plaintiff's behest so long as he is not left altogether without ingress and egress

over his own land, or by some other existing though less convenient way. (*Hiller v. A. T. & S. F. Rld. Co.*, 28 Kan. 625; *Silver v. Clay County*, 76 Kan. 228, 91 Pac. 55; *Anderson v. Cloud County*, 83 Kan. 419, 111 Pac. 464; id., 90 Kan. 15, 132 Pac. 996; *Foster v. City of Topeka*, 112 Kan. 253, 210 Pac. 341; *Bolmar v. City of Topeka*, 122 Kan. 272, 252 Pac. 229.)

A vigorous argument is made that the county board cannot legally vacate the present roadway under the general doctrine of user, estoppel and acquiescence. However, it ought to be clear from what has already been said, as well as by repeated and controlling decisions of the United States supreme court already cited, that estoppel and acquiescence cannot be applied to the prejudice of a railway company which has merely refrained from discommoding the public from using part of its right of way not presently required for its corporate purposes. The best that can be said for this argument of counsel is that they completely make their point if the rule they invoke applied to railway right-of-way property—but it does not. A judgment in an ejectment suit by the railroad company would have speedily effected a vacation of the roadway, and the county board were not bound to make an untenable defense in that sort of lawsuit before agreeing to vacate and surrender to the railroad company what belongs to it. (*Railroad Co. v. Heger*, 110 Kan. 368, 204 Pac. 1008, and federal citations therein.)

Plaintiff quite reasonably emphasizes his peculiar interest in the continued maintenance of the highway on its present location. This court appreciates his unfortunate situation. He has an excellent set of improvements on the north side of the present highway. Most of his farm is on the south side of the railway and south of where the relocated road will run. His most convenient means of access to the greater part of his farming land is by a private grade crossing over the railway track. That crossing will doubtless remain, but his necessities for its use will be greatly multiplied when the present roadway is abandoned. What other access to the outside world from plaintiff's farmstead there may be, if any, does not appear. The court is not now called on to say whether any justiciable redress can be extended to plaintiff, but it is clear that he is not entitled to an injunction to prevent the Union Pacific Railway Company from reclaiming its property, nor to interfere with the performance of the lease contract whereby a new roadway for public use is being provided by the board of county commissioners.

The foregoing disposes of the principal points urged on our atten-

tion in plaintiff's appeal, and their disposition virtually takes care of the matters raised in the railway company's cross appeal. Conclusions of law Nos. VI, VII, IX and X are ill founded and must be set aside.

It is therefore ordered that on plaintiff's appeal the judgment is affirmed, and on the cross appeal the judgment is reversed and the cause remanded with instructions to dissolve the injunction heretofore entered against the defendants and to enter judgment in their behalf.

HARVEY, J., not sitting.