No. 41,235

FRANCIS M. RIDDLE and LUCILE G. RIDDLE, His Wife, d/b/a Topeka Motel, *Appellees,* v. THE STATE HIGHWAY COMMISSION OF KANSAS, *Appellant.*

(339 P. 2d 301)

604

Opinion filed May 16, 1959.

*Charles J. Carroll,* Assistant Attorney, State Highway Commission, of Great Bend, argued the cause, and *William B. Kirkpatrick,* Assistant Attorney General, and *Michael A. Barbara,* both of Topeka, were with him on the briefs for the appellant.

*Charles Rooney, Sr.,* of Topeka, argued the cause, and *Charles Rooney, Jr.,* and *James L. Galle,* both of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

FATZER, J.: This was an eminent domain proceeding commenced by the State Highway Commission (commission) to acquire a right of way for the relocation of U. S. Highway 24 as a controlled access highway through Calhoun Bluffs northeast of Topeka. The landowners, Francis M. and Lucile G. Riddle (plaintiffs) appealed to the district court from the award of the appraisers. The commission did not appeal. Following a trial by a jury on March 5th and 6th, 1958, the plaintiffs were awarded damages in the amount of $23,887. The commission has appealed from that judgment and the order overruling its motion for a new trial. Specifications of error are hereafter noted.

Plaintiffs were the owners of a rectangular tract of land containing 6.82 acres upon which was located their home and a six-unit motel which they had profitably operated for a number of years. The south side of their premises abutted old U. S. Highway 24, a transcontinental highway carrying a great amount of through traffic, to which the plaintiffs and patrons of their motel had direct access at several points. The north or rear portion of the property was not used in connection with the motel, but was wooded, making a scenic site for the motel and plaintiffs' residence. For purpose of clarity the area involved is shown by the following map.

On May 21, 1957, the commission filed its petition for the condemnation of several lots and parcels of land, including 4.32 acres off the back or north portion of the plaintiffs' property for the construction of the new highway. Although their remaining property abuts upon the new highway, due to its controlled access feature, the plaintiffs have no right of access. When completed, the new highway will be on a high graded elevation and users will be able to see only the roof of the motel for a short distance, and, if they become aware of its location, may reach it only by leaving the new highway at a diamond shaped interchange 600 feet east of the property, or at a crossover one and one-half miles west—where, from either point, the motel is not visible.

The home and motel are located on the remaining 2.5 acres of land; no severance was occasioned by the condemnation, and neither was disturbed. The old highway will not be physically changed but will remain open to public travel and plaintiffs will

continue to have the same access to it as prior to the condemnation; the motel will face the same highway it always did and its patrons will have the same approach they always had, however, the major portion of the traffic, instead of passing in front of the motel, will travel upon the new highway at the rear. Thus, for all practical purposes, due to the diversion of traffic occasioned by the establishment of the new highway and denial of direct access thereto, the use of the property as a motel will be greatly curtailed.

On the same day the petition was filed, the court determined it was sufficient; that the commission had the power of eminent domain, and that the lands were necessary for state highway purposes. Accordingly, appraisers were duly appointed to assess damages. On June 12, 1957, the appraisers filed their report of appraisement with the clerk of the district court, and made a total award to plaintiffs in the amount of $16,629.

At the commencement of the trial it was stipulated by the parties that the value of fence and a chicken house located upon the land taken (indicated on the map as "sheds") was $360, which is not here in issue. Mr. Riddle testified on direct examination that the market value of the land when taken was $4,000 and that the difference in value of the remaining land before and after the taking was $20,500, based upon denial of access to the new highway. In addition, Clark J. Harvey and Glenn Davis, two real estate dealers, and Bob Brock, a contractor engaged in the business of building motels, gave expert testimony on behalf of the plaintiffs. Harvey testified that he was familiar with the plaintiffs' property and that they had been engaged in the motel business more than eight years; that he was familiar with the new highway and the land taken; that the entire 6.82 acres were worth $45,820; that the 4.32 acres were worth $4,320; that the remainder before the taking was worth $42,-500 and after the taking it was worth $17,500; that all damage to the remainder was $25,000; that the factors he took into consideration in arriving at those values were the denial of access to the new highway; great loss of income or profits; noise; unsightliness of the grade; inconvenience and circuity of travel occasioned by the deprivation of access; replacement costs of buying ground and building the same type of building on another transcontinental highway, and the value of the house without access to the new highway. Upon redirect examination he further testified that the damage of $25,000 to the remainder was practically all due to lack of access

to the new highway and that such lack of access constituted 95 percent of the remainder damages. The commission moved to strike all of Harvey's testimony as incompetent for the reason it was based upon three elements of damage, i. e., (1) deprivation of access to the new highway; (2) loss of business or profits, and (3) inconvenience or circuity of travel in reaching the new highway, upon the ground that such elements were not proper elements of damage and not compensable in a condemnation proceeding. The motion was overruled.

Davis and Brock testified upon direct examination that the fair market value of the land when taken was from $4,300 to $4,320, and the difference in value of the remaining land before and after the taking was from $26,112 to $26,500. Each testified he took into consideration the same factors Harvey previously testified to in arriving at the fair market value of the land remaining. Upon cross-examination each testified that because of those factors the commercial value of the land remaining had been rendered "almost completely worthless"; they made the damage "total," and rendered the property not "worth anything as a motel." One testified that "decreasing the size of the tract" was "a very minor" damage. However, all of plaintiffs' expert witnesses testified that the home was damaged substantially by the taking of the entire back yard. Upon the conclusion of plaintiffs' case, the commission renewed its motion to strike the testimony of all of plaintiffs' expert witnesses for the reasons previously stated, which likewise was overruled.

Three real estate dealers (the court-appointed appraisers) testified as expert witnesses for the commission that the fair market value of the land when taken was from $3,024 to $3,025, and the difference in value of the remaining land before and after the taking was from $4,961.04 to $6,250. Upon cross-examination each testified that he was taken to plaintiffs' property the day before the trial and instructed by counsel for the commission to determine damages to the land remaining, omitting damages for denial of access to the new highway and loss of business or profits to the motel for the reason those items were not compensable in a condemnation proceeding; accordingly, each reduced the original award of $16,629 by approximately $9,000. One witness testified he made no award for damage to the home.

As previously indicated, the verdict was in favor of the plaintiffs,

and the jury answered special questions. The commission filed a timely motion for a new trial, which was overruled, and it perfected this appeal specifying the district court erred (1) in giving instruction No. 10 that access in the instant case was a property right which should be taken into consideration in determining damages to the land remaining; (2) in refusing to strike all of the plaintiffs' expert evidence for the reason that it was based upon improper elements of damage; (3) in refusing to give instructions requested by the commission, and (4) in overruling its motion for a new trial.

As preliminary to discussing specifications of error, we note the parties concede that new U. S. Highway 24 was established by the commission as a controlled access facility pursuant to G. S. 1957 Supp. 68-1901, *et seq.*, and that plaintiffs have no direct access to the new highway where it abuts their property. Plaintiffs have access to the new highway, but by a longer and more circuitous route of travel.

It is clear from the record that plaintiffs had no right of access to the new highway prior to its construction, because no highway, conventional or otherwise, previously existed. It is also clear we are not concerned with damages for the deprivation of plaintiffs' right of direct access had old U. S. Highway 24 been widened and reconstructed as a controlled access facility.

We turn now to the specifications of error. There is no dispute between the parties concerning the value of the land taken. The principal questions presented and argued relate to the admission of evidence, the giving of instructions and the refusal to give requested instructions with respect to elements of damage which may properly be considered in determining diminution in market value of the land remaining based upon a consideration of all of the capabilities of the property for its best and most advantageous uses as it was actually situated at the time of the taking.

The commission first contends that the denial of plaintiffs' right of direct access to the new controlled access highway is not a compensable element of damage in a condemnation proceeding, and urges that the trial court erred in giving instruction No. 10, which reads:

"You are instructed that where, for the purpose of establishing, widening, or improving a public highway, a strip of land is taken from a tract and the owner's right of access from a public highway is taken, the owner is entitled

to compensation for injury to and depreciation, if any, of the remainder of the tract resulting from the appropriation of the land rights of access in question."

The commission further contends the trial court erred in refusing to sustain its motion to strike the testimony of all of plaintiffs' expert witnesses regarding diminution in market value of the land remaining because it was based primarily upon elements of damage not compensable in a condemnation proceeding, namely, denial of the right of access to the new highway; business loss or loss of profits, and the diversion of traffic from the old highway to the new.

Since statehood this court has consistently held that an abutting property owner has special private rights in *existing* streets and highways, the most important of which is the right of access to and from the street or highway, which may not be taken from him by the public without just compensation (*C. B. U. P. Rld. Co. v. Andrews,* 30 Kan. 590, 2 Pac. 677; *Highbarger v. Milford,* 71 Kan. 331, 80 Pac. 633; *Longnecker v. Railroad Co.,* 80 Kan. 413, 102 Pac. 492; *Simmons v. State Highway Commission,* 178 Kan. 26, 283 P. 2d 392; *Ruthstrom v. Peterson,* 72 Kan. 679, 83 Pac. 825; G. S. 1957 Supp. 68-1903). The right is justified upon the grounds of necessity (*Longnecker v. Railroad Co.,* supra) and is such as is reasonably necessary for the enjoyment of the land (*Highbarger v. Milford,* supra). It is a property right known in law as an "easement appurtenant" or an "easement access" to the abutting land (28 C. J. S., Easements, §§ 1-4, pp. 619-639; 25 Am. Jur., Highways, § 154, p. 448; 39 C. J. S., Highways, § 141, p. 1079; Restatement of the Law, Servitudes, § 450). It includes not only the right of the abutting owner to enter and leave his property by way of the highway, but also the right to have the premises accessible to patrons, clients and customers (*Longnecker v. Railroad Co.,* supra). However, such right is subject to reasonable regulations of the commission with respect to entrances (*Simmons v. State Highway Commission,* supra).

Where, however, a new controlled access highway is established by the commission pursuant to G. S. 1957 Supp. 68-1901, *et seq.,* through property where no highway previously existed, there is no "taking" of a right of access since such a right of access never in fact existed (*Schnider v. State of California,* 38 C 2d 439, 241 P. 2d 1, 43 A. L. R. 2d 1068; *State ex rel. State Highway Comm. v. Clevenger,* 365 Mo. 970, 291 S. W. 2d 57; *State Highway Com.*

*v. Burk et al.,* 200 Or. 211, 265 P. 2d 783; *Carazalla v. State,* 269 Wis. 593, 608a, 70 N. W. 2d 208; *State v. Calkins,* 50 Wn. 2d 716, 719, 314 P. 2d 449). See, also, articles entitled: The Limited Access Highway, 27 Wash. L. Rev. 111; 13 Mo. L. Rev. 29; Freeways, 3 Stanford L. Rev. 298).

The legislature has plenary power over highways and it is well settled that their use may be limited, controlled and regulated in the exercise of the police power whenever necessary to promote the safety and general welfare of the people (*State, ex rel., v. State Commission of Revenue and Taxation,* 163 Kan. 240, 247, 181 P. 2d 532; 25 Am. Jur., Highways, §§ 253, 254, pp. 544, 545; *State v. Atkin,* 64 Kan. 174, 67 Pac. 519, 97 Am. S. R. 343, affirmed *Atkin v. Kansas,* 191 U. S. 207, 48 L. Ed. 148, 24 S. Ct. 124; 40 C. J. S., Highways, § 232, pp. 240-244). Thus, the regulation of traffic under the police power includes such things as prohibiting left turns, prescribing one-way traffic, prohibiting access or crossovers between separated traffic lanes, prohibiting or regulating parking, and restricting the speed, weight, size and character of vehicles allowed on certain highways (*State Highway Com. v. Burk et al.,* supra, p. 230).

It is reliably reported that travel upon our inadequate highways results in 40,000 deaths, a million and a half injuries and property damage of two billion dollars a year, and that these staggering losses have been materially reduced wherever modern controlled access highways have been established leaves no doubt but that the designation of a highway as a controlled access facility pursuant to G. S. 1957 Supp. 68-1901, *et seq.,* is an exercise of the police power (*State, ex rel., v. St. Louis-S. F. Rly. Co.,* 124 Kan. 433, 260 Pac. 980; *Panhandle Co. v. Highway Comm'n,* 294 U. S. 613, 79 L. Ed. 1090, 55 S. Ct. 563).

The commission exercised the police power under the statute when it determined the highway in question should be relocated and established as a controlled access facility, denying abutters' right of access thereto. This was a separate and distinct act from the condemnation proceeding to acquire the right of way.

The authorities universally hold there are two methods by which an abutter's right of access may be curtailed or prohibited—the police power and the power of eminent domain (18 Am. Jur., Eminent Domain, § 11, p. 639; *Carazella v. State,* supra; 25 Am. Jur., Highways, § 253, p. 544; 40 C. J. S., Highways, § 232, p. 240; Free-

ways, 3 Stanford L. Rev. p. 302; The Limited Access Highway, 27 Wash. L. Rev. p. 120; *Barrett, et al. v. Union Bridge Co.,* 117 Or. 220, 243 Pac. 93; *State ex rel. Suksdorf v. Superior Court,* 169 Wn. 195, 13 P. 2d 460; *Simmons v. State Highway Commission,* supra). Under the power of eminent domain the sovereign may take or damage private property for a public purpose upon payment of just compensation (*Highbarger v. Milford,* supra; *Simmons v. State Highway Commission,* supra). On the other hand, the police power is the power which the state inherently has to restrict the use of property without paying compensation by valid regulations intending to promote public health, safety, morals and general welfare (*Mugler v. Kansas,* 123 U. S. 623, 31 L. Ed. 205, 8 S. Ct. 273; *Schaake v. Dolley,* 85 Kan. 598, 118 Pac. 80, 37 L. R. A. [n. s.] 877; *State ex rel. Carter v. Harper,* 182 Wis. 148, 153, 196 N. W. 451, 33 A. L. R. 269).

While G. S. 1957 Supp. 68-1903 authorizes the commission to acquire private or public property or property rights, including rights of access, by "condemnation, in the same manner as now or hereafter authorized by law for acquiring property or property rights in connection with highways," we think the legislature only intended that power to be invoked to acquire previously existing rights of access when an existing conventional highway is widened and improved as a controlled access facility (G. S. 1957 Supp. 68-1904). In that situation there is a taking of an existing right under the power of eminent domain for which the owner must be compensated (*Simmons v. State Highway Commission,* supra). Where, however, a new highway is established by the commission as a controlled access facility through land where no highway previously existed, and the right of access is restricted by exercise of the police power, the abutting owner is not entitled to compensation for the restriction of that right. Generally speaking, damage resulting to property through the exercise of the police power is not compensable (*Mugler v. Kansas,* supra).

We agree with the commission that if instruction No. 10 may be interpreted as instructing the jury as a matter of law that the denial of plaintiffs' right of access to the new highway was a property right which was compensable, the instruction was erroneous. To constitute a taking of property so as to be compensable under eminent domain, a private right must be impaired or destroyed. Here, no right of access existed; hence, there could be no impairment or

destruction of that right (*Schnider v. State of California,* supra; *State Highway Com. v. Burk et al.,* supra; *State v. Calkins,* supra).

When instruction No. 10 is read together with all instructions given, we do not think it was so misleading as to constitute reversible error. While it referred to the *taking of an owner's right of access,* it further advised the jury that plaintiffs were entitled to compensation for injury to and depreciation, if any, of the remainder of the tract resulting from the appropriation of the right of access. In instruction No. 2 the jury was advised to consider whether plaintiffs suffered any damage to the remainder of their land by reason of the relocation of the highway and if it found plaintiffs had suffered damage, the jury should award such sum as would reasonably compensate therefor. Instruction No. 5 informed the jury that it could not allow plaintiffs any recovery for damage that accrued subsequent to June 12, 1957 (the date of the taking) or for any future, speculative or prospective damage. Instruction No. 6 stated that the measure of damage for any injury which the jury might find occurred to plaintiffs from the relocation of the highway along their land was the difference between the market value of the remainder of the land immediately before and immediately after the appropriation. By instruction No. 7 the jury was advised that plaintiffs were entitled to recover the actual market value of the land appropriated for the location of the new highway and after it had determined that amount it should proceed to determine whether plaintiffs suffered any damage to the remainder of their land by reason of the location of the highway, independently of the value of the land actually taken; that if it found the remainder of plaintiffs' land had suffered damage, then it should proceed to determine the amount of such damage in accordance with previous instructions.

Notwithstanding the conclusion heretofore announced that there was no right of access to the new highway, and that none was condemned, that conclusion is not decisive of the further question whether the controlled access character of the new highway was relevant to the issue of damages to the land remaining. The effect that the controlled access feature might have on the market value of the land remaining presents a question which is not dependent upon the existence of a right of access. Again, emphasizing that the lack of access to the new highway cannot be considered as a factor, because that right was nonexistent, nevertheless, the market value of the land remaining may be affected by the nature and

extent of the taking, which might affect the reasonable probable uses to which the remaining land may be put, and that fact was a proper element for the jury to consider in determining damages to the land remaining.

The case of *State Highway Com. v. Burk et al*, supra, dealt with the relocation of a controlled access highway running through the owner's land. The court concluded that the owner had no right of access to the new highway; that the commission did not "take" a right of access and that no damage should be allowed for the loss of such supposed right. In the course of the opinion the court said:

". . . Our conclusion that there was no easement of access and that none was condemned is not decisive of the further question as to whether the non-access character of the highway was relevant on the issue of consequential or severance damages to the remaining property. The effect which the unique and total character of the condemnation may have upon the market value of the property not taken, presents an issue which is not dependent upon the existence of an easement. . . .

". . . In any event, whether the market value of the land not taken was affected by the 'more complete severance' resulting from the character of the highway appropriated, was a question to be determined by the jury upon the evidence. . . .

". . . It follows that the damages awarded to a land owner may include an element of loss by reason of a depreciation in the market value of the remaining land by reason of the peculiar nature of the appropriation." (l. c. 235, 236, 238.)

See, also, *McHale v. State*, 94 N. Y. S. 2d 684; *People v. Ricciardi*, 23 C. 2d 390, 144 P. 2d 799.

The commission's contention that the trial court erred in failing to strike the testimony of plaintiffs' expert witnesses is not well taken. With respect to this testimony the commission in its abstract states in effect that the witnesses took the denial of access into consideration in determining damages to the land remaining. Evidence of that character was admissible under the conclusion heretofore announced as being a proper element for the jury to consider in determining damages to the land remaining.

With respect to business loss or loss of profits we conclude that as an abstract principle of law no allowance may be made for the loss of profits to a business in a condemnation proceeding (*Bales v. Railroad Co.*, 92 Kan. 771, 141 Pac. 1009), however, we know of no rule which forbids an expert witness to take into account the fact that the business conducted on the premises was a profitable

one. We think that an expert witness may properly consider that fact as tending to show the property could be and had been adapted to a use which was profitably carried on (*Troy Housing Authority v. Clemente Brothers, Inc.*, 164 N. Y. S. 2d 555). In *State v. Hudson Circle Service Center, Inc.*, 46 N. J. Super 125, 134 A. 2d 113, it was said:

"The court in the *Lenzner* case noted initially the rule followed in this State that 'even though the taking of the land actually results in the loss of the owner's business located thereon, he is not entitled to any independent compensation for the value of the business.' The court then noted 'the increasing tendency displayed in recent cases of giving fair and weighty consideration to the consequential loss of business as an element of the compensation rightly due to the owner.' The opinion makes reference to the case of *Housing Authority of City of Bridgeport v. Lustig*, 139 Conn. 73, 90 A. 2d 169 (Sup. Ct. Err. 1952), which involved a condemnation report which fixed the value of the owner's poultry market building at $6,500 and then stated that if the owner should be compensated for the building with an established poultry business therein, the fair market value of the building was $16,500. The court, in sustaining an award of $16,500, held that the owner was entitled to the fair market value of his real property, and that 'in determining such value it was proper to consider all of the elements which an owner or a prospective purchaser could reasonably urge as affecting its fair price.'" (l. c. 133.)

Plaintiffs are entitled to compensation according to the most advantageous and profitable use they could make of their land, the measure being the price which could be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy; in other words, the fair market value of the land (*Hoy v. Kansas Turnpike Authority*, 184 Kan. 70, 334 P. 2d 315). The diminution of the market value of plaintiffs' remaining land should be fixed after giving due consideration to all the factors which customarily enter into purchase and sale negotiations. Consequently, a foremost factor in the sale of the motel would be its prospective earning power evidenced in considerable part by past earnings. We reject the contention of the commission that the award was based upon an improper element of damage for business loss or loss of profits. As previously indicated, the abstract of the commission states this factor was considered by plaintiffs' expert witnesses in relation to damage to the land remaining. As such, it was properly received for consideration by the jury.

With respect to the diversion of traffic from the old to the new highway, the commission was under no duty to the plaintiffs to

maintain a highway near their residence and motel, and it may relocate the highway when the public safety, convenience, economy, classification or reclassification require such change (G. S. 1957 Supp. 68-406). Although the residence and motel were made less accessible as a result of the relocation of U. S. Highway 24, that fact may or may not affect the market value of the land remaining. Thus, the diversion of the major portion of the traffic is not an element of damage to be considered by the jury in determining damage to the land remaining. However, the diversion of the flow of traffic from in front of plaintiffs' place of business to the new highway constructed upon the high grade at its rear from which plaintiffs' premises had no direct access, is a circumstance of which the jury should be informed and the question whether such fact results in damage to the land remaining was properly left to their ultimate decision (*People v. Ricciardi*, 23 C. 2d 390, 144 P. 2d 799; *Pike County v. Whittington*, 263 Ala. 47, 81 So. 2d 288; *McRea v. Marion County*, 222 Ala. 511, 133 So. 278; *McHale v. State*, 94 N. Y. S. 2d 684).

We now turn to the commission's requested instructions, which were denied:

"1. You are instructed not to allow compensation for deprivation of access to new highway 24 under the facts of this case for the reason that the landowner has not been legally deprived of access to an existing road previously on the location of the new highway 24. ·

"2. You are instructed that an owner abutting a highway does not have a vested property right in the traffic traveling thereon and therefore loss of anticipated profits or business loss suffered by the plaintiff in his business occasioned by the relocation of highway 24 are not to be considered by you as an element of damages in this action.

"3. You are instructed to disregard any evidence concerning the cost of reproduction of the motel and house as such is not legal evidence of the market value of either the motel or the house. You are only to consider evidence of market value."

In view of what has been heretofore stated and concluded, it would serve little purpose to discuss each of the above requested instructions. Suffice it to say, standing alone each correctly stated an abstract principle of law, but under the facts and circumstances disclosed by the record we do not think the trial court erred in failing to give them.

The commission's last assignment of error is that the trial court erred in overruling its motion for a new trial. It would serve little purpose to lengthen this opinion by a discussion of this point.

From what has been heretofore stated, we conclude the trial court did not err in overruling that motion.

Upon a consideration of the record it has not been affirmatively made to appear that the trial court erred in any of the respects contended by the commission, and the judgment is affirmed.

It is so ordered.

PRICE and ROBB, JJ., concur in the result.

FATZER, J., dissenting in part: In my opinion this case has not been correctly decided and I must respectfully dissent from paragraphs 6 and 7 of the syllabus and corresponding portions of the opinion.

In my opinion the expert testimony of the plaintiffs should have been stricken since it was improper to prove damages to the land remaining. At most, that testimony established consequential injury to plaintiffs' property not compensable in a condemnation proceeding. Likewise, instruction No. 10 constituted reversible error for reasons hereafter stated.

The effect of the majority opinion is that although the principal elements of damage involved in this appeal (lack of or denial of access to the new highway; loss of business or loss of profits, and diversion of traffic from the old to the new highway) *are not compensable*, nevertheless, because plaintiffs are abutting owners without direct access, *such elements may be considered* and are a circumstance that enters into the question of the amount of damage to the land remaining of which the jury should be informed and the question left to their ultimate decision. Thus, plaintiffs are permitted to recover indirectly that which they cannot recover directly. In other words, the majority opinion denies, but at the same time permits, these damages. This holding in effect makes the state an insurer of a continued flow of traffic upon the highway past the plaintiffs' door, and, if in the interest of public safety and welfare, the highway is relocated and traffic diverted to a controlled access facility, a guarantor for all business losses suffered by plaintiffs as a result of the commission's lawful action. It has never been so.

Stripped of its ramifications, this case simmers down to the plain hard facts that the principal damage claimed to the land remaining occurred solely as a consequence of the diversion of traffic from the old highway, and the denial of direct access to the new highway. The expert testimony was that because of those factors the

commercial value of the land remaining has been rendered "almost completely worthless"; they made the remainder damage "total"; they were the "principal" remainder damage; they constituted "95 percent" of the remainder damage, and rendered the property not "worth anything as a motel."

Plaintiffs' motel and home were not disturbed in any respect by the condemnation except a portion of the back yard was taken. The motel faces the same highway it always faced; it has the same access it always had, and its patrons have the same approach from all directions they always had. The only difference is that traffic which formerly went in front of the motel will pass at the rear over the new highway, which, due to its controlled access facility, denies plaintiffs and their patrons direct access. Traffic is the lifeblood—the stock and trade, of a motel. Without it, it becomes like a melon severed from its vine—it withers and dies. But, old U. S. Highway 24 was established for the benefit of the traveling public, and only incidentally for the benefit of plaintiffs and others who engaged in business along its way. Those businesses were established with the knowledge that new highways might be constructed which would largely divert the flow of traffic from past their door. This was a risk they assumed when they established their business.

My colleagues agree it is universally held that had there been no taking of a portion of plaintiffs' property the elements of damage they now claim would not be compensable. In other words, where a direct taking of some of a landowners' property is not involved, he cannot recover consequential damages for the relocation of the highway entirely off of his property. Hence, had the new highway been relocated along the north line of plaintiffs' property or north of that point, no damage could be allowed. However, the majority opinion justifies the items of damage upon the ground that since a part of plaintiffs' property was appropriated for the right of way, no matter how small, they immediately become entitled to have these items of consequential damage presented to the jury in determining diminution in value of the land remaining. The holding is necessarily that even though other property owners along the old highway are injured in exactly the same manner as plaintiffs, the fact that their property was not needed for the new right of way prevents them from recovering damages they may all suffer. The conclusion is unsound, and the majority rule in the United States does not support it.

While the owner of land is to be given by way of compensation the fair market value of the land taken plus the diminution in value of that remaining before and after the taking (*Hoy v. Kansas Turnpike Authority*, 184 Kan. 70, 334 P. 2d 315), courts generally, if not universally, recognize and approve an exception to this rule that there are elements of damage for which no compensation will be given even though such elements may cause diminution in the value of the land remaining. The cases are nearly, if not entirely, unanimous in their holding that the owner of land abutting on a highway has no property or other vested right in the continuation of the flow of traffic which passes his door so long as he is not deprived of ingress and egress to the highway so as to be compensable in an eminent domain proceeding (*Board of County Com'rs v. Slaughter*, 49 N. M. 141, 143, 158 P. 2d 859; *State et al. v. Hoblitt et al.*, 87 Mont. 403, 288 Pac. 181; *Hempstead County v. Huddleston*, 182 Ark. 276, 31 S. W. 2d 300; *Nelson et ux. v. State Highway Board*, 110 Vt. 44, 1 A. 2d 689, 118 A. L. R. 915; *Johnson's Petition*, 344 Pa. 5, 23 A. 2d 880; *State of Arizona v. Carrow*, 57 Ariz. 434, 114 P. 2d 896, 898; *Walker v. State*, 48 Wn. 2d 587, 295 P. 2d 328, 331; *Rudolph Ramelli, Inc. v. City of New Orleans*, 233 La. 291, 96 So. 2d 572 [suit for damages resulting from construction of a railroad overpass]; *Johoda v. State Road Department* (Florida, 1958), 106 So. 2d 870). I know of no better statement of the rule than that of Mr. Justice Brewer in the early case of *Heller v. A. T. & S. F. Rld. Co.*, 28 Kan. 625, wherein he said:

". . . Where a party owns a lot which abuts on that portion of the street vacated so that access to the lot is shut off, it is clear that the lot-owner is directly injured, and may properly challenge the action. The closing up of access to the lot is the *direct* result of the vacating of the street, and he, by the loss of access to his lot, suffers an injury which is not common to the public; but in the case at bar, access to plaintiff's lots is in no manner interfered with. The full width of the street in front and on the side is free and undisturbed, and the only real complaint is, that by the vacating of the street away from her lots the course of travel is changed. But this is only an *indirect* result. There is nothing to prevent travel from coming by her lots if the travelers desire it. The way to the heart of the city by her lots is a little more remote than it was before, but still free passage is open to all who wish to pass thereby. No one is compelled to stay away. *Access to the lots is the same that it was before,* so that the injury is only the indirect result of the action complained of, and it is an injury which, if it exists at all, is sustained by all other lots along the street west of the parts vacated. Travel by those lots may be diminished, travel on streets south may be increased, and to that extent property on such southern streets may be benefited thereby. The same

result would follow if some other avenue of approach to the city were specially improved. *Public travel naturally seeks that which is the best route, but surely that thus the tendency of travel in front of her lots was diverted would give her no cause of action. The benefits which come and go from the changing currents of travel are not matters in respect to which any individual has any vested right against the judgment of the public authorities. . . ."* (l. c. 628, 629.) (Emphasis supplied.)

See, also, *Highbarger v. Milford,* 71 Kan. 331, 80 Pac. 633; *Foster v. City of Topeka,* 112 Kan. 253, 255, 210 Pac. 341; *Ruff v. Shawnee County Comm'rs,* 127 Kan. 188, 200, 201, 272 Pac. 189; *Johnson's Petition,* supra; *State, ex rel., v. Linzell,* 163 O. S. 97, 104, 126 N. E. 2d 53; *State Highway Commission v. Humphreys* (Tex. Civ App.), 58 S. W. 2d 144, 145. In the Linzell case, *supra,* it was said:

"It is now an established doctrine in most jurisdictions that such an owner (abutting owner) has no right to the continuation or maintenance of the flow of traffic past his property. The diminution in the value of land occasioned by a public improvement that diverts the main flow of traffic from in front of one's premises is noncompensable. (Cases cited.) The change in traffic flow in such a case is the result of the exercise of the police power or the incidental result of a lawful act, and is not the taking or damaging of a property right. (Cases cited.)" (l. c. 104.)

In *Carazalla v. State,* 269 Wis. 593, 70 N. W. 2d 208, the plaintiffs owned a dairy farm which abutted U. S. Highway 51. That highway was relocated as a controlled access facility and passed through the farm a short distance east of its prior location. The trial court refused an instruction that the jury disregard any evidence as to any damages resulting from inconvenience caused the owner or a prospective buyer as a result of the relocation. The supreme court of Wisconsin affirmed that ruling. However, upon a petition for rehearing, the supreme court reversed itself, vacated the mandate, and stated:

". . . in our original opinion we failed to perceive that any damages to the remaining lands due to the exercise by the state of its police power in making the relocated highway a controlled-access highway are not recoverable. The reason for such lack of perception was that the institution of the condemnation proceedings and the designation of the relocated highway as a controlled-access highway were so interwoven that we considered the two to be an inseparable whole when actually they constituted two separate and distinct acts.

"*If relocated U. S. Highway 51 had not been designated as a controlled-access highway,* but instead that part thereof located upon the parcel taken from the plaintiffs had been constructed on such a high embankment as to make it impracticable for passing traffic to reach plaintiffs' remaining abutting lands from such highway, the rule announced in our former opinion would

be applicable. Such rule, however, is not applicable to a situation where moving traffic would have suitable ingress to, and egress from, plaintiffs' abutting lands from the relocated highway *except for the fact that the state's police power has been exercised to prohibit the same.*" (l. c. 608c.) (Emphasis supplied.)

In *Johnson's Petition*, supra, the supreme court of Pennsylvania considered the precise question here presented. There, the appellee owned land abutting State Highway Route No. 20 upon which was located his restaurant and beer parlor, dwelling house, and a garage. The highway was relocated upon the north end of the tract but the old highway remained open to public travel, which connected with the new highway east and west of appellee's land. In fixing the difference in market value before and after the taking, all witnesses took into account diversion of traffic and allowed a considerable portion of their estimation of damage on that account. In denying a new trial, the trial court said, "that the diversion of traffic constituted a large part of the decreased value." In reversing the case, the supreme court said:

"It is for the loss in market value, *due to the taking,* that the Commonwealth is responsible. The owner's property rights were not invaded nor was there any legal injury to it by reason of the mere fact that the Commonwealth provided an additional road with the result that the public had the choice of two routes and the travelers might choose the new route in preference to the old one. The state owed no duty to the appellee to see that travel continued to pass by his door. The current of public travel is bound to shift as affected by innumerable conditions. 'Benefits which come and go with changing curents of public travel are not matters in which any individual has any vested right against the judgment of those public officials whose duty it is to build and maintain these highways.' . . ."

"To adopt the contention of the land owner as a general legal principle would lend to absurd results. Assume, for the sake of argument, that the state had taken only a few square feet from the northern tip of this land. Then under appellee's theory he would have been entitled to have diversion of traffic considered in determining the market value after the taking. This illustration shows that the claim made here is not for damages due to the taking of the north corner of this land but for an ensuing result that was too remote to have relevance in fixing damages. The loss in traffic was directly due to changes in the connection at points remote from the land taken. The results were not peculiar to this land owner but were shared to a greater or less degree by all properties located on the old road. It followed as a result of the highway department's determining that an additional route should be furnished for the accommodation of the public and the result is *damnum absque injuria.*" (l. c. 10, 11.)

In *Board of County Com'rs v. Slaughter,* supra, the same ques-tion was presented as in the instant appeal. Slaughter's property abutted U. S. Highway 85 upon which was located a store, res-taurant, residence, filling station and numerous tourist cabins. The highway was relocated through Slaughter's property three-eighths of a mile from his improvements. Between the improvements and the new highway was a mesa which made direct access with the new highway practically impossible. The contention was there made, as is made in the majority opinion, that because the high-way was relocated upon Slaughter's land and traffic was diverted from in front of his improvements and he was denied practical access, damages resulting from the diversion of traffic and the de-nial of access should be considered by the jury in determining damage to the land remaining. In denying that contention the court said:

"Unless we can say that public roads are built primarily for the benefit of the occasional landowner along the route, rather than for the necessity and convenience of the general public, it must be said that the landowner has no vested right in the current of public travel. *Nelson v. State Highway Board,* supra. And, it can make no difference, as we view it, that a small portion of appellee's acreage may have been taken for the new right of way. The situ-ation is no different from that where no portion of the land is taken, unless—which is not the case here—it may be said that the taking of some acreage from the whole, in some measure, and of itself, damaged the whole for the purpose for which it was reserved or used above and beyond the value to be allotted to the portion taken.

"The applicable rule as to damages for diversion of traffic is the same under one situation as another; we test the claimed vested right to the cur-rent of public travel by the same measure, whether twenty feet may have been taken off the back of an owner's lot without damage to the front where the flow of traffic was formerly found, or whether the relocated highway is situated twenty feet further away so that it be not necessary to take any portion of the owner's land. Obviously, the landowner's claim must rest or fall upon a decision whether she has a vested right in the flow of public travel, which once came by her door, but for which now, for the convenience of the general public, a shorter and more convenient route has been opened and is being employed. We hold she has no such right." (l. c. 148.)

The case of *Jahoda v. State Road Department,* supra, decided November 21, 1958, quotes from and adopts the dissenting opinion of *Pike County v. Whittington* (1955), 263 Ala. 47, 81 So. 2d 288 (cited in the majority opinion here) as the majority opinion of the supreme court of Florida, wherein it was said:

"Ordinarily no person has a vested right in maintenance of a public high-

way in any particular place and state owes no duty to any person to send public traffic past his door."

. . . . . . . . . . . . . .

"The majority opinion in the Whittington case, *supra*, cites as authority Alabama cases. Without attempting to analyze these cases, we think the dissenting opinion clearly sets forth the great majority rule in the United States and it is persuasive to us. Thus, we quote from the dissenting opinion in the Whitington case, *supra*.

" 'The following illustrates the result reached by the majority. A and B could be adjacent landowners, each fronting 200 feet on a state highway. A's lot is 200 yards deep. B's lot is only 198 yards deep. Each has a filling station and grocery store facing the highway and do a comparable business. The highway is relocated so as to pass 199 yards behind their places of business. It thus takes one yard of A's property but takes none of B's. A would be entitled to compensation because the flow of traffic on the old highway was taken away from him while his neighbor B would, under practically all the decisions in all the states, be entitled to nothing. *Pruett v. Las Vegas, Inc.,* 261 Ala. 557, 74 So. 2d 807. There is something about such a result which to me seems unfair and unjust. . . .'" ( 106 So. 2d, p. 872. )

In *McHale v. State,* 94 N. Y. S. 2d 684 (cited in the majority opinion), it was held:

"Mere diversion of traffic alone regardless of fact that new road traverses a portion of claimant's land will not support a judgment for consequential damages.

"Owner of land abutting on highway has no property or vested right in continuance of a certain amount of traffic over the highway so long as he is not deprived of ingress and egress." (Syl. ¶¶ 7, 8.)

See, also, *Nelson et ux. v. State Highway Board,* supra; *People v. Thomas,* 108 C. 2d 832, 239 P. 2d 914; *State v. Calkins,* 50 Wn. 2d 716, 314 P. 2d 449, and 29 C. J. S., Eminent Domain, § 162, p. 1031.

While plaintiffs are entitled to be compensated for diminution of market value of the land remaining, it does not follow that the state is responsible for every result that may ensue when a highway is relocated as a controlled access facility ( 1 Elliott, Roads and Streets, § 298, p. 359).

Here, the diversion of traffic resulting in injury to plaintiffs' business was not due to the *taking of their land,* but was occasioned by the relocation of the new highway resulting in the public having a choice of two routes, and in all probability preferring the newer one. While it was necessary to acquire the right of way by condemnation, the *taking* did not divert the traffic, hence plaintiffs' *rights* were not invaded. The diversion of traffic was an *indirect* consequence and too far removed from the taking to form the basis of a claim for *legal* injury. Had the new highway been relocated

off plaintiffs' land the same damage here in question would doubtless have occurred, *but there would have been no taking*. How, then, can it be asserted the damage here claimed resulted from the taking? To ask the question is to answer it.

It is well settled that mere circuity of travel to and from real property does not of itself result in legal impairment of the right of ingress and egress to and from such property, where any resulting interference is but an inconvenience shared in common with the general public and is necessary in the public interest to make travel safer and more efficient. Such damage is *damnum absque injuria*. (*State, ex rel., v. Linzell,* supra; *Walker v. State,* supra; *Turner v. State Roads Comm.,* 213 Md. 428, 132 A. 2d 455 [construction of median strip in highway resulting in longer route for owners to gain access]; *Jones Beach Boulevard Estate, Inc., v. Moses,* 268 N. Y. 362, 197 N. E. 313; *Christy v. C. B. & Q. R. R. Co.,* 240 Mo. App. 632, 212 S. W. 2d 476.) See, also, *Ruthstrom v. Peterson,* 72 Kan. 679, 83 Pac. 825; *Anderson v. Cloud County,* 83 Kan. 419, 111 Pac. 464; *Borton v. Mangus,* 93 Kan. 719, 145 Pac. 835; *Smith v. Reno County Comm'rs,* 121 Kan. 444, 446, 447, 247 Pac. 1046; and *Bohan v. Sumner County Comm'rs,* 131 Kan. 87, 289 Pac. 436. In *Walker v. State,* supra, it was said:

". . . Circuity of route, resulting from an exercise of the police power, is an incidental result of a lawful act. It is not the taking or *damaging* of a property right. . . ." (l. c. 591.) (Emphasis supplied.)

With respect to business losses, the decided weight of judicial authority is that an abutting owner may not recover damages based upon loss of business or the loss of anticipated profits from the business in a condemnation proceeding (*Bales v. Railroad Co.,* 92 Kan. 771, 141 Pac. 1009; *State v. Stabb,* 226 Ind. 319, 79 N. E. 2d 392; *State v. Vella* (Or. 1958), 323 P. 2d 941; *Dusevich v. Wisconsin Power & Light Co.,* 260 Wis. 641, 51 N. W. 2d 732; *Realty Corporation v. City of Norfolk,* 199 Va. 716, 101 S. E. 2d 527; *St. Louis Housing Authority v. Bainter* (Mo. 1957), 297 S. W. 2d 529; 18 Am. Jur., Eminent Domain, §§ 259, 261; 29 C. J. S., Eminent Domain, § 162, pp. 1031-1033). *This is especially true where such losses result from the diversion of traffic caused by the relocation or improvement of a highway* (29 C. J. S., Eminent Domain, § 162, p. 1032).

The testimony objected to was based upon the elements of diversion of traffic, lack or denial of direct access, circuity of travel, and loss of business profits, which are merely consequential and do

not result from a "taking" of property compensable in a condemnation proceeding. As previously indicated, they occurred solely as a result of lawful action of the commission in changing the location of the highway and declaring it to be a controlled access facility under G. S. 1957 Supp. 68-1901, *et seq.* In my opinion the trial court erred in failing to sustain the commission's motion to strike that testimony.

I now refer to instruction No. 10 which reads:

"You are instructed that where, for the purpose of establishing, widening or improving a public highway, a strip of land is taken from a tract and the *owner's right of access from a public highway is taken,* the owner is entitled to compensation for injury to and depreciation, if any, of the remainder of the tract resulting from *the appropriation of the land rights of access* in question." (Emphasis supplied.)

This instruction advised the jury that the right of access is a property right which could be considered if injury or depreciation resulted from the appropriation of that right. The instruction would have been proper had a right of access been taken, but was erroneously given because there was no "taking" of a right of access since such a right never in fact existed.

It is apparent that in preparing instruction No. 10 the district court followed the instruction given in the Simmons case since they are almost verbatim. That instruction reads:

"You are instructed that where, for the purpose of (establishing) widening *and* improving a public highway, a strip of land is taken from a tract and the owner's right of access from a public highway also is taken, the owner is entitled *to compensation to the extent of the value of the land taken, and* to compensation for injury to and depreciation, if any, of the remainder of the tract resulting from the appropriation of the land *and* rights of access in question." (Emphasis supplied.)

In the above quoted instruction the word "establishing" in parentheses was added in instruction No. 10 and the word "and" between the words "widening and improving" was changed to "or," and the remaining portion emphasized was omitted, otherwise the two instructions are the same.

In the Simmons case, as the opinion indicates, an *existing* highway with *existing* rights of access was widened by the commission and converted into a controlled access facility. Rights of access in that case were taken, but, *that is not the case here.* Instruction No. 10 makes no reference to the controlled access character of the new highway which denied that right. Where an ordinary or con-

ventional highway is constructed there may be an intent to serve abutting owners, but where a new controlled access highway is established the intent is just the opposite, and a resolution establishing such a highway with full controlled access facilities gives adequate notice that no rights of access exist unless specifically granted (*Schnider v. State of California*, 38 C. 2d 439, 241 P. 2d 1, 43 A. L. R. 2d 1068; 3 Stanford Law Rev. 298, 300, 308). Had the new highway not been designated as a controlled access facility, it would have been proper in my judgment for the jury to consider the high embankment and the resulting impracticable access to plaintiffs' land in determining diminution in value to the land remaining. But, nothing was taken from the plaintiffs and to allow damages to the land remaining based upon the jury's consideration of a circumstance arising from a nonexistent right would amount to a gift rather than payment for an injury or destruction of a right.

The views expressed herein are not inconsistent with *Franks v. State Highway Commission*, 182 Kan. 131, 319 P. 2d 535, since in that case the highway had been laid out and the right of way secured by condemnation long prior to commission action under G. S. 1957 Supp. 68-1901, *et seq.*, designating it to be a controlled access facility (29 C. J. S., Eminent Domain, § 105, p. 911; 20 C. J., Eminent Domain, § 131, pp. 656, 657, note 49; *United States v. Certain Lands*, 112 F. 622). Here, commission action designating the new highway to be a controlled access facility which restricted rights of access occurred *prior* to the exercise of the power of eminent domain to secure the right of way and no previous existing rights of access were involved or required to be taken.

The cases of *State Highway Com. v. Burk et al.*, 200 Or. 211, 265 P. 2d 783, and *State ex rel. State Highway Comm. v. Clevenger*, 365 Mo. 970, 291 S. W. 2d 57, are cited in the court's opinion as authority to permit consideration of consequential damages to the land remaining. While those cases would appear to be correctly decided, they deal with a different factual situation than here presented. The question there involved was severance damage only where the controlled access highway divided the land into separate tracts. Both courts held that the "unique and total character" of the condemnation, *i. e.*, the manner, nature and extent of the taking, the separation of the land into different tracts, and the added inconvenience, if any, in going from one part of the farm to the other,

was proper for the jury to consider in determining damages to the land remaining. Here, there was no severance, hence that factor does not enter into the instant case. Moreover, the consequential damages here sought to be established did not result from a severance of the property, but, as previously indicated, from the diversion of traffic and the denial of direct access from the new highway. The commission's objection to instruction No. 10 should have been sustained, and requested instructions No. 1, 2 and 3, set forth in the court's opinion should have been given.

This was a difficult case for the district court and for this court on appellate review. Much time has been spent upon it. I do not assert that the plaintiffs have not sustained damage to the land remaining. It is evident they have. My objection to the judgment is that in proving those damages improper elements were presented to the jury, and instructions were refused which should have been given.

In view of the foregoing, I would reverse the case with instructions to the district court to set aside the judgment and grant the commission a new trial.

WERTZ, J., concurs in the foregoing dissent.

SCHROEDER, J. (concurring): It is impossible for me to agree with the opinion written for the court except to concur in the result and note that the factual statement is correct although it needs supplementation. The specifications of error and contentions of the state highway commission have been properly stated.

The importance of this decision compels me to supplement the facts and relate in some detail my views of the law applicable to this case.

Contrary to the impression given in the syllabi and what has heretofore been written in this case, the court has before it an appeal in a condemnation case and not an action involving state police power. To emphasize this the petition in the condemnation proceedings of the state highway commission (appellant) recites in part:

"2. That petitioner states that under and by virtue of section 68-413, G. S. 1953 Supp. it has the right of eminent domain and is authorized to acquire right of way in compliance with G. S. 1949, 26-101, in the name of the State of Kansas for establishing, laying out, opening, constructing, maintaining, improving and draining the State Highway System.

"3. That under and by virtue of section 68-1901 through section 68-1906, G. S. 1953 Supp., the State Highway Commission has the authority to establish controlled access facilities and to construct and maintain frontage roads and to acquire private and public property, *including the right of access for such controlled access facilities and frontage roads by condemnation proceedings.*

"4. That on the 11th day of July, 1956, and the 13th day of February, 1957, the State Highway Commission in regular session found and determined that traffic conditions both present and future in Shawnee County, Kansas, justified and required the establishment of controlled access facilities, and that *it was therefore necessary to acquire the land hereinafter described as a controlled access facility,* and to acquire certain lots and parcels of land described herein for right of way and ordered that said lots and parcels of land *be acquired by the State Highway Commission in the name of the State of Kansas by the exercise of the right of eminent domain as provided by section 68-413, G. S. 1953 Supp.*

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"6. Petitioner further alleges *it hereby desires to purchase or acquire by this condemnation proceeding the right of way hereinafter described and all of the rights to control the ingress and egress in and to all such tracts designated.*" (Emphasis added.)

The property taken from the landowners (appellees) by the state highway commission was described in Tract 12 (*a*) and included the following:

".    .    . Together with the abutter's right of access to the highway over and across the 'FIRST' and 'SECOND' courses."

Also taken from the landowners by condemnation was the right of access along the eastern boundary of their land which had not been taken, running north and south. This was described in Tract 12 (*b*) as follows:

"Any abutter's rights of access to the highway over and across a line described as follows:    .    .    ."

In 1953 the legislature enacted Chapter 68, Article 19 (G. S. 1957 Supp., 68-1901 to 1906, incl.), which authorized the establishment and acquisition of controlled access facilities by the state highway commission. G. S. 1957 Supp., 68-1903, specifically provides:

"The highway authorities, jointly or severally, may *acquire the desired private or public property, including rights of access,* light, air or view *for controlled access facilities, by gift, devise, purchase or condemnation,* in the same manner as now or hereafter authorized by law for acquiring property or property rights in connection with highways, roads and streets within their respective jurisdictions." (Emphasis added.)

Prior to 1953 the state highway commission had no authority to acquire controlled access facilities. The provisions of G. S.

1957 Supp., 68-413 (enacted in 1951), limit the commission in the acquisition of a right of way for state highway purposes by *condemnation proceedings* to an *easement*. It is permitted to acquire no other interest in land taken for such purpose, with certain exceptions where buildings or improvements are to be constructed which are not applicable to the facts in the instant case. Clearly, the landowner retains all other interests in the land taken which is subject to such an easement. (See also, G. S. 1949, 68-413; G. S. 1957 Supp., 68-413a; *State, ex rel., v. State Highway Comm.,* 163 Kan. 187, 182 P. 2d 127; and *Sutton v. Frazier,* infra.)

With this history the legislature of this state by enacting 68-1903, *supra,* has spoken on the subject of controlled access facilities and prescribed the exclusive methods by which property, including rights of access, may be taken—that is, "by gift, devise, purchase or *condemnation, in the same manner as now or hereafter authorized by law for acquiring property or property rights."* (Emphasis added.) The taking of rights of access from a landowner upon land which he retains interests is without any doubt the taking of a property right. What the value of such property right taken may be is another question which varies with the facts and circumstances of each case. Conceivably in a given situation they may be of little more than nominal value. Therefore, it seems to me that the legislature clearly intended by 68-1903, *supra,* that a landowner deprived of such property rights would be compensated therefor. Cases from other jurisdictions are not persuasive on this point since they are founded upon their own legislative enactments and legal history which are not reflected by the citation of an isolated case.

It is apparent the petition filed by the state highway commission in the action presently before the court complied strictly with the legislative mandates and particularly 68-1903, *supra.*

While it is true that no action was pending in the district court of Shawnee County at the time the petition in the instant case was filed with the clerk of the district court, immediately upon appeal by the landowner from the condemnation award an action was docketed which gave the district court jurisdiction of the matter in accordance with the tenor of the petition previously filed. The petition then became a jurisdictional instrument relative to the action pending in the district court, since it fully complied with the applicable condemnation statutes. (See *Sutton v. Frazier,* 183 Kan. 33, 325 P. 2d 338, and cases cited therein.)

The report of the appraisers filed with the clerk of the district court of Shawnee County on June 12, 1957, *submitted on a form provided by counsel for the highway commission,* made the following award to the landowners:

"12 (a) Land Taken—4.32 acres ...................... $3,024.00
          Fence—24 rods ............................ 60.00
          Abstracting ............................... 25.00
          Chicken house and fence purchased ............ 300.00

          TOTAL ................................. $3,409.00
"12 (b) 400 feet abutters right of access and all damages
          to remainder ........................ $13,220.00

          TOTAL ..................................... $16,629.00"

The jury's verdict in the amount of $23,887, exclusive of $360 for fence and chicken house not in issue, was accompanied by five special questions which were submitted to the jury and answered as follows:

"1. What was the best use to be made of the premises at the time of the taking in June, 1957?

"ANSWER: Motel.

"2. What was the value of the premises before the taking?

"ANSWER: $46,297.00.

"3. What was the value of the 4 and 32/100 acres of land taken in June, 1957?

"ANSWER: $3,672.00.

"4. What was the value of the remaining land in the amount of 2 acres with the improvements thereon before the taking?

"ANSWER: $42,625.00.

"5. What was the value of the remaining land and premises after the taking?

"ANSWER: $22,770.00."

No objection was made by the appellant to these questions submitted nor were additional questions requested.

It should be noted that following the appraisers' award the state highway commission paid into court for the landowners the sum of $16,629, and by agreement of counsel an order of the trial court filed July 26, 1957, directed the clerk to pay to the landowners the sum of $15,129. The balance of $1,500 by agreement of counsel was paid to the landowners by a subsequent order entered on the 21st day of March, 1958.

It appears from the record herein that counsel for the state highway commission did not become concerned with the question

of access until the day before the trial of this action in the district court. On that date the appraisers originally appointed by the court were taken to the premises and directed by counsel for the state highway commission to determine the damages to the land remaining without allowing damage for denial of access and loss of business for the motel. They reduced their original appraisal, without consulting the district judge who appointed them for instructions, by the sum of approximately $9,000.

Without objection in the trial of the action the original report of the appraisers was introduced through testimony to the jury in cross examination by counsel for the landowners. The variance of approximately $9,000 in the testimony of the appraisers, called as witnesses for the appellant, was capitalized to the full extent by counsel for the landowners.

Assuming that an appeal by the landowner to the district court from the condemnation award brings all parties before the district court and by bringing in its entirety the question of the sufficiency of the award to the district court (*Moore v. Kansas Turnpike Authority*, 181 Kan. 840, 317 P. 2d 384) permits the state highway commission to raise any question concerning the award; and assuming further that the foregoing conduct of counsel for the state highway commission does not operate as an estoppel against the commission (See *State, ex rel., v. Wheat Farming Co.*, 137 Kan. 697, 715, 22 P. 2d 1093; *Kucera v. State*, 160 Kan. 624, 164 P. 2d 115, and cases cited in these opinions); the record presented upon appeal does not disclose that the trial court committed reversible error in the trial of the case.

Should the trial court have sustained appellant's motion to strike the testimony of all of the landowners' expert witnesses?

The appellant contends the testimony was incompetent for the reason that it was based upon elements of damage which were improper to consider, namely (1) deprivation of access to the new highway; (2) loss of business profits; and (3) inconvenience or circuity of travel in reaching the new highway.

Inasmuch as there is no dispute between the parties concerning the value of the land taken, attention will be focused upon elements of damage which may properly be considered in determining diminution in market value of the land remaining based upon a consideration of all of the capabilities of the property for its best and most advantageous uses as it was actually situated at the time of the taking.

The expert witnesses called by the landowners were fully qualified *without objection* by the appellant to testify concerning the diminution in market value of the land remaining. They were permitted to testify by giving their opinion concerning the market value of the remaining tract before and after the taking. The witness Harvey, after stating his opinion as above, *without objection*, was permitted to testify on direct examination concerning the various elements which he took into consideration in arriving at these values. Upon cross examination by counsel for the appellant each element was made the subject of extensive examination with repeated efforts by counsel for the appellant to force the witness into a position which would indicate that such element was independently considered by the witness and a definite value placed upon the particular element in arriving at the total market value. The witness, however, made it clear that he did not compute the market value on this basis, but that all of the elements considered were taken together in arriving at his opinion as to the fair market value of the remaining tract before the taking and the fair market value of the tract remaining after the taking from which the damage to the remainder was computed.

In material respects the testimony of other expert witnesses called by the landowners was similar and presents the same questions. There were no objections to the testimony of these experts except the motion of counsel for the appellant to strike their testimony.

While the term "access" was repeatedly used throughout the trial in the examination of witnesses, it is apparent that the term "access" was loosely used. There is no doubt what the witnesses had in mind was the diversion of traffic from old highway 24 to the new highway which would, as a matter of fact, almost completely destroy the motel as a business property. It may be noted in the instant case that had the state highway commission taken no rights of access the damage to the landowners would have been almost identical by reason of the elevation of the new highway constructed to the rear of the motel property. Access to the new highway would of necessity be by a circuitous route by reason of the elevated highway construction which practically conceals the motel from the view of traffic on the new highway.

What the court is actually confronted with is a request to depart from the long-established rule by which damages to the remaining

tract in a condemnation action are determined—the fair market value of the remaining tract immediately before the taking diminished by the fair market value of such tract immediately after the taking.

The fair and reasonable market value of a tract of real property is what those wishing to purchase in good faith would be willing to give for it, and what the owner desiring to sell in good faith would be willing to take for it on the date in question, and not what it would bring at a forced sale, or on the other hand, an inflated or speculative value. (*Hoy v. Kansas Turnpike Authority*, 184 Kan. 70, 79, 334 P. 2d 315, and cases therein cited.) Theoretically, applied to the situation presented, this means the fair market value for which the remaining tract of land could be sold immediately prior to the taking, absent knowledge on the part of the purchaser that there was a condemnation pending and absent knowledge of the use to which the property sought in condemnation may be put, diminished by the fair market value at which the property could be sold immediately after the taking, with full knowledge of the condemnation and the use to which the property condemned could be put. The foregoing rule in this jurisdiction has no inroads or exceptions which permit any part of the diminution of the fair and reasonable market value of the remaining tract to be carved away from the whole. It is a rule designed, by a practical approach to the question of damages, to make a landowner whole where a portion of his land is taken from him by condemnation.

The individual under our constitutional form of government is paramount and his rights are protected by both the Federal and State Constitutions, in contradistinction to foreign dictatorial ideologies where the state predominates and those obsessed by the power of the state assert the *police power* subjugating the individual to its will. Had the landowners in the instant case purchased the motel property within six months prior to the condemnation without any knowledge of condemnation for the proposed new highway at its fair and reasonable market price, and upon condemnation were forced to succumb to the theory advanced by the state highway commission, no tribunal or person could tell them or anyone else had the rulings of the trial court been affirmed it would in effect have made them *"a gift"* to which they were not entitled. The simple reason is the landowners would find themselves more than $9,000 short.

Justice Holmes, one of the leading jurists of his time, speaking for the Supreme Court of the United States uttered pearls of wisdom touching this vital question of eminent domain and the individual rights of citizens relative to their protection in the exercise of state power under the fourteenth amendment to the Federal Constitution in *Boston Chamber of Commerce v. Boston*, 217 U. S. 189, 30 S. Ct. 459, 54 L. Ed. 725. He said:

". . . But the Constitution does not require a disregard of the mode of ownership—of the state of the title . . . *It merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is what has the owner lost, not what has the taker gained.* . . ." (Emphasis added.) (p. 195.)

Once an expert witness is qualified to testify concerning the fair and reasonable market value of a tract of land in a condemnation action by reason of experience, education and technical training, his opinion testimony becomes the evidence of the fair and reasonable market value, whether it be stated concerning the tract of land taken, the remaining portion not taken immediately before the taking, or the remaining portion not taken immediately after the taking, and the purpose of further examination to determine the elements or factors taken into consideration in arriving at his opinion concerning the fair and reasonable market value, whether on direct or cross examination, serves only to inform the jury what credence to give the expert testimony. The elements or factors taken into consideration by an expert witness may vary considerably, depending upon the specific nature of his training and experience. Experience has demonstrated that market value of land cannot be determined with exactitude and that competent and honest experts are bound to differ when they express values in dollars. Consequently, when jurors are called upon to make a final decision as to values, they are entitled to know how the experts have arrived at their estimates, what elements they have placed in the scales in solving the problem. At the same time it must be remembered that estimates as to the costs of rebuilding the motel or injury to particular uses affected by the taking, are not recoverable or admissible as distinct items of damage, *but such losses may become useful as elements bearing on the market value before and after the appropriation.*

If it can be shown that improper elements were considered by an expert witness in arriving at his opinion testimony concerning the fair market value, thereby reflecting an improper valuation, it be-

comes the function of the trial court to properly instruct the jury with respect to the law before the case is submitted to the jury. Counsel desiring to protect the party he represents in the action must so examine the expert witness that the jury will not be confused in applying the law, as instructed by the trial court, to the facts concerning which testimony was given at the trial. (See *Hoy v. Kansas Turnpike Authority*, supra.)

Therefore, upon the facts and circumstances presented by the record in the instant case the trial court did not err in refusing to strike the testimony of all the landowners' expert witnesses.

Did the trial court properly instruct the jury?

It is inescapable that the taking of a portion of the appellees' land in the instant case and the location of a new highway thereon greatly damaged or completely destroyed the motel, located on the portion of land not taken, as a business property. Regardless of the terminology used by the expert witnesses in describing the various factors they took into consideration, this is the inescapable conclusion of their testimony. Thus, whether the elements were described as deprivation of access to the new highway, loss of business profits, inconvenience or circuity of travel in reaching the new highway, or summarized in argument as the diversion of traffic from the old highway to the new highway, the damages to the remaining tract were almost completely the result of the destruction of the motel as a business property.

Where a business property is affected by a condemnation and the element of income is present at the time of the condemnation, and not in the uncertain future, the nature and prosperity of the business may be taken into consideration in determining the fair market value of the property in question. (*Bales v. Railroad Co.*, 92 Kan. 771, 777, 141 Pac. 1009; *Eisenring v. Kansas Turnpike Authority*, 183 Kan. 774, 332 P. 2d 539, and cases cited therein.)

Two cases have been before this court in which the power of the state highway commission to acquire controlled access facilities has been considered. In *Simmons v. State Highway Commission*, 178 Kan. 26, 283 P. 2d 392, decided in 1955, the land condemned abutted a previously existing highway in which the landowner had rights of access along the entire length of his property fronting the highway. A strip of land was condemned fronting this highway and rights of access were taken pursuant to G. S. 1957 Supp., 68-1901, *et. seq.* The parties there conceded the de-

privation of access to the landowner's property was accomplished by condemnation pursuant to the controlled access facilities statute and a landowner was entitled to compensation to the extent of the value of the land taken, and for injuries to and depreciation, if any, of the remainder of the tract resulting from the appropriation of the land and rights of access in question.

In *Franks v. State Highway Commission,* 182 Kan. 131, 319 P. 2d 535, the landowners brought an injunction action against the state highway commission. It had previously condemned a right of way in 1951 over property of the landowners for the purpose of *relocating* U. S. Highway No. 24 prior to authorization by the state legislature of the acquisition of controlled access facilities. After this condemnation in 1951 and prior to the construction of the new highway thereon where no previous highway existed, the state highway commission in 1956 condemned an additional right of way to build a frontage road and rights of access to the land previously taken. This subsequent condemnation was abandoned as to the landowners. Thereafter the commission proceeded with the construction of the new U. S. Highway No. 24 as a controlled access facility taking the right of access, and the landowners filed an injunction action to enjoin the taking of their access. The action came to this court on an appeal from an order overruling the commission's demurrer to the petition. In affirming the trial court, by a unanimous decision, it was stated:

"The allegations of the petition make it appear that if an injunction were refused, the commission, without condemnation, could limit and control plaintiffs' previous access to what is now a controlled access facility. *This involves a vital property right.* (25 Am. Jur., Highways, § 154, p. 448; 39 C. J. S., Highways, § 141, p. 1081.) Such exigencies may later compel the trial court to deny the injunction because it would inflict great injury upon the commission and its power of eminent domain and would adversely affect the public interest. *In lieu of a decree to enjoin, the court could award damages to plaintiffs as compensation (Provident Mut. Life Ins. Co. v. State Highway Comm.,* 155 Kan. 351, 355, 125 P. 2d 346) *by reason of the controlled access facility and its effect on plaintiffs' right of access to and from their property.*" (Emphasis added.) (p. 137.)

The effect of the language used in the opinion for the court herein is to overrule the *Franks* case, since no previous highway had been constructed on the relocated route of U. S. Highway No. 24 at the time access rights were taken by the commencement of grading and construction on the new highway.

Insofar as the instructions given are material to the issues herein the trial court instructed the jury as follows:

"2. In this appeal there are two items for you to consider and decide. The first is to determine the reasonable market value of the 4.32 acres of land condemned and appropriated by the appellee as of June 12, 1957, and appellants are entitled to recover from the appellee such reasonable market value of the land so condemned and appropriated for best and most advantageous uses. The second item for you to consider is whether the appellants suffered any damage to the remainder of their land *by reason of the location of the highway of the appellee thereon.* If you find the appellants have suffered damage, then you should award such sum as you may find would reasonably compensate them therefor in accordance with the instructions hereinafter given.

"4. If you find that appellants' land has suffered damages by reason of the appropriation of a portion thereof, *and the locating of the highway over the same,* then you are instructed, in ascertaining such damage, that *you have a right to consider all of the capabilities of the land and its most advantageous use as it was situated at the time of such appropriation,* or on June 12, 1957.

"5. You are further instructed that you cannot allow the appellants any recovery for damage that may have accrued subsequent to June 12, 1957, the date of the appropriation of the land, *or for any future, speculative or prospective damage that may or may not thereafter have accrued.*

"6. The *measure of damage for any injury which you may find occurred to appellants from the location of the highway along their land is the difference between the market value of the remainder of appellants' land immediately before and immediately after the appropriation.*

"7. In this case appellants are entitled, in any event, to recover from the appellee the actual market value of the land appropriated in the location of the highway in question, and you should first determine the reasonable market value of the land so appropriated under the instructions hereinbefore given. After you have done this, you should then proceed to determine *whether the appellants have suffered any damage to the remainder of their land, by reason of the location of said highway,* independently of the value of the land actually taken. If you find that the remainder of appellants' land has sustained damage as hereinbefore instructed you should then proceed to determine the amount of such damage, and in returning your verdict in this case you should insert the total amount of the recovery to which you find the appellants are entitled.

"10. You are instructed that where, for the purpose of establishing, widening or improving a public highway, a strip of land is taken from a tract and the owner's right of access from a public highway also is taken, the owner is entitled to compensation for injury to and depreciation, if any, of the remainder of the tract resulting from the appropriation of the land rights of access in question."

While counsel for the state highway commission complain of instruction No. 10 to which they objected at the time of trial, no

objection was made to the other instructions given which have been quoted above. These instructions to which there was no objection properly state the general law applicable to the trial of a condemnation action where only a portion of the land is taken from a landowner. It is important to note, from the emphasized portions above that damages to the remainder of the land were consistently stated to be by reason of the appropriation of a portion thereof, *and the locating of the highway over the same.* This clearly indicates, in accordance with the law consistently applied by this court, that with respect to remainder damages the jury is entitled to consider the use to which the land taken will be put. Thus, in the recent case of *Hoy v. Kansas Turnpike Authority,* supra, it was proper in allowing damages for the remainder to consider the high elevation of the county highway on the approach to the overpass on the turnpike directly in front of the farm improvements. Another recent case in which the use to which the condemned right of way property would be put by the Kansas Turnpike Authority was vitally material is *Randle v. Kansas Turnpike Authority,* 181 Kan. 416, 312 P. 2d 235.

As heretofore stated the legislature provided that where controlled access facilities are established, the property, including rights of access, required for the right of way must be taken by gift, devise, purchase or *condemnation,* and by reason of the history relative to condemnation for highway right of way purposes the taking of a right of access was a property right. While it may be argued that the right of access to a new highway, which had never before existed, is different than a right of access to an existing highway, nevertheless it is the taking of a property right (*Franks v. State Highway Commission,* supra) and must be considered among the elements in determining the damages to the remainder of a tract of land where only a portion thereof is taken for a right of way by condemnation.

The trial court, therefore, in giving instruction No. 10, which is not as artfully worded as it may have been, informed the jury that the taking of access rights was a proper element to consider in determining the damages to the remaining portion of the land not taken. An instruction cannot be isolated apart from other instructions given but must be read together with all the instructions given, and when so considered the instruction was proper. There was no reason to believe that the jury considered instruction No.

10 as one permitting the independent evaluation of the right of access as additional damages in determining the compensation awarded the landowner, since there was no evidence that the right of access was valued independently in arriving at the fair and reasonable market value of the remaining tract immediately before and after the taking in ascertaining the damage to the remainder concerning which the expert witnesses testified. This is fortified by the answers given by the jury to the special questions.

For the reasons heretofore stated the requested instructions of the state highway commission were properly denied, except as hereafter noted.

Was it proper to consider diversion of traffic from the old highway to the new highway as an element of damage to the remaining tract of land in the instant case?

An answer to the foregoing question requires an understanding of the law concerning consequential damages. "Consequential damages" is the term applied to damages to, or the destruction of, *property not actually taken,* and they arise when property is not actually taken or entered but an injury to it occurs as the natural result of an act lawfully done by another. The general rule is that acts done in the proper exercise of governmental powers, or pursuant to authority conferred by a valid act of the legislature, *and not directly encroaching on private property,* although their *consequences* may impair its use or value, *do not constitute a taking, under the constitutional or statutory requirements of compensation for property taken* and do not entitle the owner of such property to compensation, in the absence of constitutional or statutory provisions requiring compensation to be made for damaging, injuring or destroying property, such loss being *damnum absque injuria.* ( 29 C. J. S., Eminent Domain, § 111, pp. 919, 920. )

Counsel for the state highway commission rely heavily upon consequential damage cases. One of these is the leading case of *Heller v. A. T. & S. F. Rld. Co.,* 28 Kan. 625, in which a substantial portion of the opinion written by Justice Brewer is quoted in the dissenting opinion to the effect that the benefits which come and go from the changing course of travel are not matters in respect to which any individual has any vested right against the judgment of the public authorities. In the *Heller* case Syllabus ¶ 3 reads:

"Where a part of a street is attempted to be vacated and the owners of lots abutting thereon do not complain, *held,* that the owner of a lot in another block, in front of whose lot the street is left its full width, and access to

whose lot is in no respect disturbed or abridged, may not maintain an action to restrain the vacation, although thereby the general course of travel will probably be thrown on some other street and no longer pass in front of said lot-owner's property."

Clearly there was no taking of property from the landowner, and this is typical of the consequential damage cases in this jurisdiction. One of the most recent consequential damage cases upon which reliance is placed by the appellant is *Richert v. Board of Education of the City of Newton*, 177 Kan. 502, 280 P. 2d 596. This case illustrates a typical set of facts in which the consequential damage rule is applicable. The owner of the lone remaining residence in a city block sought to recover damages as a result of the extending of existing school property by the Board of Education in the exercise of its power of eminent domain. The remaining residence owned by the plaintiff was not included in the condemnation proceedings. The landowner's petition seeking damages alleged a *"taking" of his property in effect* on the ground that the damages he suffered were different in kind and special instead of different in degree from those suffered by the community in general. It was held the consequential damages suffered by the owner could not be recovered in that such damages differed only in degree, and not in kind, from those suffered by others in the immediate vicinity and the public in general. As such, they were not covered by the constitution or statutes of Kansas. Reference is made to the opinion of the *Richert* case for further discussion and citation of authorities relative to the rule concerning consequential damages.

Even where the damages are consequential there is a respectable line of authorities in this jurisdiction permitting recovery under the word "taken" in the statute where the damages are special and peculiar to the owner. These damages are said not to be within the consequential damage rule. (*C. B. U. P. Rld. Co. v. Andrews*, 41 Kan. 370, 21 Pac. 276; *Prickett v. Belvue Drainage District*, 159 Kan. 136, 152 P. 2d 870; *Sester v. Belvue Drainage District*, 159 Kan. 143, 152 P. 2d 875 [after trial, 162 Kan. 1, 173 P. 2d 619]; 109 Am. St. Rep., p. 909; and 29 C. J. S., Eminent Domain, § 110, p. 917.) See also the discussion in *Heller v. A. T. & S. F. Rld. Co.*, supra.

It is true, the various factors taken into consideration in arriving at the fair market value of a tract of land or portion thereof, as heretofore discussed, cannot be evaluated independently and added

together to arrive at a total figure. This is clearly illustrated in *Saathoff v. State Highway Comm.*, 146 Kan. 465, 72 P. 2d 74; *Case v. State Highway Comm.*, 156 Kan. 163, 131 P. 2d 696; and *Hoy v. Kansas Turnpike Authority*, supra. All factors which affect the fair and reasonable market value of a tract of land or portion thereof must be considered together.

The argument is advanced that if diversion of traffic cannot be considered as an *independent* element and separately added to the total award for damages in making a determination of damages to the remainder of a tract of land in a condemnation action, where only a portion of the entire tract is taken, then to permit a jury to consider diversion of traffic as one of the elements, among others, responsible for the diminution of the fair and reasonable market value, under the rule stated by the trial court in instruction No. 6, it permits the landowners to recover indirectly that which they cannot recover directly. This is untenable. Pushed to its logical conclusion no landowner could recover damages in any condemnation action. It would simply be a process of eliminating each element considered by an expert witness in arriving at his opinion concerning the fair and reasonable market value of a tract of land, since no one factor can be independently evaluated and added with others to arrive at the total. It amounts to reverse reasoning. It would further be fallacious to reason that because in a consequential damage case, where no property is taken from a landowner, there can be no recovery of damages for diversion of traffic, that this factor should be eliminated as an element in the determination of damages in a condemnation action where there is a direct invasion of the landowner's property.

A few courts of last resort in other jurisdictions by making references to hypothetical facts as close to the demarcation line as possible between condemnation cases and consequential damage cases have held that it was improper to consider diversion of traffic as an element of damage in a condemnation case. (*Jahoda v. State Road Department* [Florida, 1958], 106 So. 2d 870; and *Board of County Com'rs v. Slaughter*, 49 N. M. 141, 158 P. 2d 859.) For reasons heretofore stated, cases on eminent domain from foreign jurisdictions are not persuasive.

If the opinion expressed herein would be bolstered by resort to a foreign case, *Regina et al. v. Monroe County, Appellant*, 319 Pa. 257, 179 A. 36, presents a factual situation almost identical with

the case at bar, except that instead of being a motel the business affected was a hotel. The court there said:

". . . It is true that a specific estimate of future profits cannot constitute a separate item of damages in fixing the compensation to be awarded in cases of this kind: . . . It is equally true, however, that decrease or loss of business as a result of a condemnation is an appropriate factor to be considered in determining the depreciation in the fair market value of the property: . . . Likewise, the necessary expenditure involved in restoring the property to a fit condition for continuing the business or other former use may be considered, not as a specific item of damage, but as affecting the market value: . . ." (p. 259.)

The court further said in the opinion:

". . . It appears clearly from the testimony complained of, most of which was elicited on cross-examination, that the consideration given these various elements by plaintiff's experts was with regard to their effect on the market value of the property. In the words of one witness, these factors were considered 'from the angle of sales proposition as to what influence these changes would have on a prospective customer.' A jury might reasonably infer that the changes suffered in plaintiff's premises would materially affect its value to a prospective customer, and it cannot be denied that the *relocation of the road was responsible for the changes.*" (Emphasis added.) (p. 260.)

Further in the opinion it was said:

". . . In the case before us, an important element of the value of the premises as a hotel or boarding house was derived from its location along the stream of traffic, and there is no doubt that that value might well be lessened in the eyes of a purchaser as a result of the relocation of the road. Clearly, the admission of the testimony complained of was not error, nor was the charge based thereon improper." (p. 261.)

A more recent Pennsylvania case, *Johnson's Petition*, 344 Pa. 5, 23 A. 2d 880, cited in the dissenting opinion herein, on facts very close to the demarcation line of consequential damage cases reached a contrary conclusion from that stated in the *Regina* case, but distinguished the *Regina* case and did not overrule it.

The extent to which this court has gone in permitting recovery for depreciation to the remainder of a tract of land where only a portion thereof is taken by eminent domain, is illustrated by the case of *Ives v. Kansas Turnpike Authority*, 184 Kan. 134, 334 P. 2d 399, where two tracts of land located one mile apart were operated as a single farming unit. It was held proper, under the rule of law stated in the trial court's instruction No. 6 herein, to regard the two tracts as one unit in the assessment of damages to the remaining

tract although a limited access right of way was taken from only one of the tracts.

An award in an eminent domain proceeding is a bar to the recovery of damages subsequently accruing; therefore, all items of damage which are recoverable must be initially recovered. Compensation to be adequate must be placed on the maximum use of the rights acquired, rather than the maximum intended use of the rights acquired.

In conclusion it may be said, while a landowner from whom a portion of an entire tract of land is taken by eminent domain proceedings is not entitled to recover separate items of damage for deprivation of access to a new highway, estimated loss of business profits, inconveniences or circuity of travel in reaching the new highway, or diversion of traffic, nevertheless, the decrease or loss of business as a result of the condemnation by reason of the foregoing factors may be considered in determining the depreciation in the fair and reasonable market value of the remaining property. The influence these factors would have on a prospective purchaser, no doubt caused by a relocation of the highway, were proper for a jury to consider. It is proper for a jury to consider all of the factors which an owner or a prospective purchaser could reasonably urge as affecting the fair price. Clearly, the trial court did not err in its refusal to strike the testimony of the landowners' expert witnesses, and it did not commit reversible error in the instructions given the jury or in its refusal to give the instructions requested by the appellant.

PARKER, C. J., joins in the foregoing concurring opinion.

JACKSON, J., concurring: I concur in the majority opinion as written by Mr. Justice Fatzer, supplemented by the concurring opinion of Mr. Justice Schroeder.